**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

FILED

JAN 1 6 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| **GERARD DJATE**<br>2330 Good Hope Road SE, #1222<br>Washington, DC 20020<br>(202) 460-0097 / 678-5941<br>  Plaintiff,<br><br>v.<br><br>**THE DISTRICT OF COLUMBIA**<br><br>SERVE : Office of the Corporation Counsel<br>  Or Office of the Attorney General<br>  1350 Pennsylvania Avenue, N.W.<br>  Washington, DC 20004<br>**and**<br><br>**HAWK ONE SECURITY, INC.**<br>**HAWK ONE SECURITY SPECIAL POLICE**<br><br>SERVE: Calvin Kimball, Registered Agent<br>  1331 H Street NW, Suite 1100<br>  Washington, DC 20005<br>**and**<br><br>**DONTE A. SLATE,**<br>3436 Brinkley Road, Temple Hills, MD 20748<br>**TIM DELYONS, AND JANE AND**<br>**JOHN DOES ONE THROUGH SIX, UNKNOWN**<br>**EMPLOYEES OF HAWK ONE SECURITY**<br>**SPECIAL POLICE**<br><br>**JANE AND JOHN DOES ONE THROUGH SIX,**<br>  **UNKNOWN EMPLOYEES AND**<br>  **AGENTS OF THE DEPARTMENT OF**<br>  **MOTOR VEHICLES AND**<br>  **ADJUDICATION SERVICES**<br>  301 C Street NW,<br>  Washington, DC 20001<br>**and** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>**Civil Action No.**<br><br>CASE NUMBER  1:07CV00100<br><br>JUDGE: Emmet G. Sullivan<br><br>DECK TYPE: Civil Rights (non-employm<br><br>DATE STAMP: 01/16/2007 |

JURY ACTION

1

JOHN AND JANE DOES ONE THROUGH TEN,    )
   UNKNOWN OFFICERS OF THE D.C.    )
   METROPOLITAN POLICE DEPARTMENT    )
   FIRST DISTRICT    )
   415 4th Street, SW,    )
   Washington, DC 20001    )
       )
          Defendants.    )
_____)

## COMPLAINT AND JURY DEMAND

### Preliminary Statement

1.    This is an action against the District of Columbia, and in their individual, agency, and

official capacities, against Donte A. Slate, Tim Delyons, Jane and John Does One through Six,

and in its corporate and agency capacities, against Hawk One Security Inc./Hawk One Security

Special Police, and against certain unnamed individual employees and agents of the District of

Columbia Department of Motor Vehicles and Adjudication Services, Jane and John Does One

through Six,  and against certain unnamed individual employees and agents of the District of

Columbia Metropolitan Police Department, John and Jane Does One Through Ten, for money

damages for deprivations under color of state law of the rights, privileges and immunities

secured by the Constitution of the United States. Specifically, Plaintiff brings this action under

Section 1983 of the Civil Rights Act of 1871, 42 U.S.C. § 1983, for injuries suffered by him,

because defendants beat, and willfully used unreasonable and excessive force against him, and

failed to provide justification and to report the incidents involving the excessive and

unreasonable use of force. Plaintiff also alleges discrimination based on race or national origin,

pursuant to the Civil Rights Act of 1871, as amended, 42 U.S.C. § 1983, against Defendant

District of Columbia for maintaining a de facto unconstitutional and discriminatory policy of

condoning and/or ignoring complaints of excessive and unreasonable use of force directly and

through its duly authorized agents police officers Tim Delyons and Donte A. Slate. This civil

action also arises under the District of Columbia Human Rights Act of 1977. Finally, this is

also an action against defendants for assault, battery, intentional infliction of emotional distress,

negligence, improper or lack of training of officers, lack of supervision/monitoring of officers' actions, and unlawful retaliation.

## Jurisdiction and Venue

2. Plaintiff's Section 1983 claims are filed under the Constitution of the United States, specifically under 42 U.S.C. § 1983 to redress injuries suffered by him for deprivations under color of state law of rights, privileges, and immunities secured by the United States Constitution. This Court has jurisdiction over plaintiff's Section 1983 claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3). This Court has pendent jurisdiction over plaintiff's District of Columbia Human Rights claims and common law claims for assault, battery, negligence, intentional infliction of emotional distress, pursuant to 28 U.S.C. § 1367(a) on the ground that they are so related to the claims within this Court's original jurisdiction as to form part of the same controversy.

3. Venue is appropriate in the District of Columbia pursuant to 28 U.S.C. § 1391 since each of the claims for relief arose in this judicial district.

## Parties

4. At the time of the initial occurrence and incidence Plaintiff Gerard Djate, was an adult resident of the State of Nevada, having his primary residence in that state at 29 N 28 Street, Las Vegas, NV 89101. Currently, Plaintiff is a resident of the District of Columbia who resides at 2330 Good Hope Road SE, #1222, Washington, DC 20020. He brings this action in his individual capacity.

5. Defendant District of Columbia is a municipal _corporation capable of being sued under D.C. Code § 1-102.

6. Defendants Donte A. Slate, Tim Delyons, and unknown Jane and John Does One through Six, are special police officers formally employed by Hawk One Security, Inc./Hawk One

3

Security Special Police, but agents/servants of Defendant District of Columbia and under its right to control, who at all relevant times asserted governmental authority or power given them by Defendant District of Columbia to carry out their tortuous acts. Thus, at all times relevant to this complaint, Donte A.Slate and Tim Delyons were acting under color of state law.

7. Defendant Hawk One Security, Inc./Hawk One Security Special Police is a company incorporated in the District of Columbia and privately employed under agreement with Defendant District of Columbia to provide protection and security at the Department of Motor Vehicles and Adjudication Services and other government buildings. At all relevant times, Defendant Hawk One Security, Inc./Hawk One Security Special Police was acting under color of state law.

8. Defendants Jane and John Does One through Six were at all relevant times employees of the District of Columbia Department of Motor Vehicles and Adjudication Services who at all times relevant to this complaint were acting under color of state law.

9. Defendants John and Jane Does One through Ten were at all relevant times employees of the District of Columbia Metropolitan Police Department who at all times relevant to this complaint were acting under color of state law.

## Factual Allegations

10 In the afternoon of Friday, January 20, 2006, at about 3:00 p.m., Mr. Gerard Djate ("Djate") arrived at the District of Columbia Department of Motor Vehicles-Adjudication Services ("DMV")located at 301 C Street NW, Washington, DC for the business purpose of renewing his vehicle registration.

11. After obtaining Ticket No. H902, Djate was directed to Window No. 1 for service after that ticket was called.

4

12. When Djate's turn came up for appearance at the counter of Window No. 1 for the renewal process, he was told by the DMV employee, a young Black man, that his vehicle renewal transaction could not be completed because the DMV computer system showed some outstanding parking tickets. Djate disputed the same and that DMV employee explained that a computer glitch could well be at the root of the issue. After Djate made inquiries about how to resolve the issue of the alleged outstanding parking tickets so as to complete the renewal transaction, that DMV employee directed him to go to either Window No. 9 or Window No. 10, address payment matters there, then return to Window No. 1 for completion of his vehicle renewal transaction.

13. From Window No. 9, Djate learned that he was misdirected and the DMV employee, a young Black female at that Window, in turn directed Djate to yet another DMV employee, a young Black woman, standing at a door entrance.

14. After being apprised of Djate's matter, that third DMV employee, obviously upset about what was happening, asked Djate to go along with her to see the DMV employee at Window No. 1.

15. Back at Window No. 1, that third DMV employee rebuked the one at Window No.1, who apologized to her. Thereafter, that third DMV employee directed Djate to the conjoining DMV Adjudication services at Room 1034.

16. On arriving at Room 1034, and after explaining the purpose of his visit, Djate was issued Ticket No. 63 by a fourth DMV employee, an older Black woman with very thin hair, through whom Djate learned his wait time should be no more than 20 minutes.

17. Because there were persistent general complaints by customers also waiting there about unnecessary long wait times caused by DMV employees there either standing idly, chatting casually, etc., Djate decided to ascertain such facts after the passing of some times.

18. Having ascertained and found legitimacy in those complaints, Djate so advised that fourth DMV employee with thin hair, who became irritated accusing Djate of attempting to cut through the waiting line. Rejecting that DMV's employee frivolous accusations, Djate requested to see a supervisor. That DMV employee refused to satisfy Djate's request.

19. When Djate restated his request, that fourth DMV employee with thin hair went to the Hawk One Security ("Hawk") Special Police officer standing nearby, a somewhat heavy set young Black woman, and told her that Djate was being disorderly.

20. From her standing position, that HAWK special police officer in turn, shouted to Djate in a very commandeering and loud voice "you, you come here!!!" in front of all the waiting customers. To which command, Djate replied "You are the one wanting to see me. So you come here to me". After hearing that reply from Djate, some of the waiting customers busted out laughing looking at that HAWK special police officer.

21. That HAWK special police officer then walked to Djate while talking over her talkie-walkie. Having approached Djate, that officer asked him to leave. Djate told that HAWK special police officer that she had no reason to ask him to leave simply because Djate requested to see a supervisor.

22. In turn, that officer stated "very well, the supervisor's office is around the corner, you go over there!!!" in the same intimidating and commandeering loud voice falsely referring to her Hawk supervisor's office. After Djate made corrections that Djate needed to see, not a HAWK supervisor, but a DMV-Adjudication Services supervisor, that HAWK special police officer became irritated.

23. While that HAWK special police officer and Djate were still talking, a fifth DMV employee, another young Black woman, that happened to be passing by stopped and inquired about what was going on. In response, that HAWK officer indicated to that DMV employee that Djate wanted to see a DMV-Adjudication Services supervisor.

6

24.  Upon hearing that, that fifth DMV employee stated "that would be me", then turning to Djate, she asked "How can I help you, Sir?". After hearing Djate, that fifth DMV employee said to Djate "oh! I can help you with that! Give me your paperwork so I can check for you". Djate handed her his paperwork and followed her close to her office and waited outside until she returned as instructed.

25.  That DMV-Adjudication Services supervisor then handed to Djate a DMV printout stating "I really don't know what those [other DMV] people are talking about. I verified all of our systems and I didn't see anywhere where you have outstanding parking tickets to be paid. Here, take this printout with you and go back to them to show it to them telling them that there is nothing owing". Djate also received his paperwork back from her and returned to the adjacent DMV at Window No.1.

26.  However, the first DMV employee indicated that he could not see Djate while walking away and directed Djate to yet another DMV employee, a young Black woman. Djate followed the instructions.

27.  However, that sixth DMV employee stated to Djate that notwithstanding the contents of the printout from the DMV-Adjudication Services and the contentions of one of its supervisors, unless and until Djate shows some receipts evidencing that Djate paid the allegedly outstanding parking tickets, there would be no completion of renewal transaction of his vehicle registration.

28.  That sixth DMV employee also wrote down Djate's vehicle tag number on a piece of paper and asked him to return to that supervisor for a specific request that the latter check information on that tag number, then return for completion of the renewal transaction.

29.  Following her instructions, Djate returned to the adjoining DMV-Adjudication Services once more but a seventh DMV employee, a young Black woman that replaced the older one with very thin hair, boldly and abruptly told Djate "you are not going to see anybody. We are closed". Djate replied by displaying Ticket No. 63 and stating the instructions he just received.

7

In response, that seventh DMV employee stated "we are now at Ticket No. 75 anyway, your ticket shows no. 63. So we can't see you, comeback on Monday!".

30. When Djate insisted that he was only following instructions just received, that seventh DMV employee who was present when the older DMV employee with very thin hair was making her baseless accusations against Djate, stated that no supervisor would see Djate and that if Djate did not leave immediately, she would call security because Djate was "a troublemaker". After making that statement, that seventh DMV employee left to go talk to the HAWK officers, now two (2) of them, a young Black male in addition to the female officer with whom Djate had discussions earlier.

31. In the meantime, another DMV employee, an eight, came out of the office of the supervisor who earlier assisted Djate and Djate was there to see again as instructed. That eight DMV employee recognized Djate, so Djate approached her about his matter and she asked Djate to give her a minute to complete business with another customer she came out to see.

32. While Djate was waiting, the male Hawk special police officer came up to him and stated "I want you to leave right now!!!" in a loud and commandeering voice. To which Djate replied "I cannot leave right now because someone is going to see me". To which, that HAWK Special Police officer stated to Djate: "Oh no, I'm telling you: leave right now!!!". In turn, Djate calmly replied "no, I have no reasons to leave right now. I'm here to conduct business transactions". In response, that HAWK Special Police officer stated to Djate:" Ok, I, I'm telling you, you have no more business here, you are out!!!". In response, Djate again calmly replied "not until that lady clerk sees me". To which, that HAWK Special Police officer stated to Djate So he said "very well, ..."

33. Immediately, upon saying "very well..", that HAWK Special Police officer violently and forcefully laid his hands on Djate, hitting him, punching him, shoveling him, kicking him, smashing his sides with heavy blows, pulling on his necktie, shirt, pants, and jacket, etc., and attempting to choke him and to get him to hit the hard floor. Djate resisted hitting the floor but

8

in no way fought back. In the course of the violent physical aggression, Djate lost his grip on the portefolio that Djate was holding and contents of it caused to be scattered all over the floor.

34. Realizing that he was not being successful in getting Djate to hit the floor on his head, that HAWK Special Police officer thereafter tackled him from behind and finally succeeded in getting Djate's head to hit the concrete floor. However, Djate was successful in getting back upon his feet since he used to practice Judo many years ago.

35. During that violent attack, another HAWK Special Police officer, another Black male rushed to join in the assault and battery on Djate. These two HAWK Special Police officers hit Djate with extreme, excessive force and brutality in various areas causing Djate to suffer cuts, bruises, swelling, sprains, etc. These two HAWK Special Police officers eventually violently pushed Djate through the eastern glass and metal exit door, hitting him and kicking him behind with them feet, throwing him out.

36. As a direct result of the acts of these two HAWK Special Police officers, Djate sustained emotional harms and physical injuries in various areas of his body, including but not limited to the top of his head, his ankles, knees, arms, right and left sides, and his back.

37. During that unjustified violent attack, personal items such as wallet, pocket appointment book, Blackberry phone, business cards, were caused to fall out of Djate's clothing and be scattered all over the floor.

38. In the course of these events, these two HAWK Special Police officers caused serious damages to Djate's prescription eyeglasses, necktie, hat, etc.

39. Because reentry is not possible through the eastern side exit door, while still in pains, Djate was able to reenter the DMV building through the Metropolitan Police Department ('MPD") Headquarters entrance located on Indiana Avenue NW, in order to recover his personal and

9

confidential items caused to be left behind on the DMV floor and secure the identity of his attackers.

40. After recovering those items, and seeing these two HAWK Special Police officers again, Djate requested that these two officers identify themselves which they refused to do.

41. Only after identifying himself as an attorney to one who appeared to be the supervisors of these two HAWK Special Police officers, and explaining his entitlement to the information sought, did these two HAWK Special Police officers reluctantly identify themselves as Officers Donte A. Slate and Tim Delyons.

42. It was thereafter that Djate and other eyewitnesses learned to their great surprise that these two HAWK Special Police officers falsely alleged that they acted as they did because Djate was cursing and breaching peace at the DMV.

43. On that account, several witnesses advised Djate to call 911 and request an ambulance.

44. Djate called 911 emergency assistance and some times later, several MPD police officers and a Black male Police Detective from the First District located at 415 4th Street S.W., Washington, DC responded along with an ambulance. A Caucasian male MPD officer present stated that Djate should sue because if these Hawk Special Police officers honestly believed Djate was causing disorder, they should have followed warranted protocol for making arrest.

45. Djate reported through narration with some witnesses present the whole series of events as these occurred.

46. Djate received summary emergency medical assistance at the scene of the occurrences.

47. On the following day, January 21, 2006, because of the persistent pains and sufferings, Djate was advised to report to a hospital which he did.

48. By January 26, 2006, Hawk Special Police Officers Donte A. Slate and Tim Delyons were still working at the DMV. About January 26, 2006, these two Hawk Special Police Officers were tauntingly and maliciously making faces at Djate when they saw him again down the hall at the DMV. On or about January 24, 2006, Djate visited the DMV director and Vice-Director and hand-delivered to them a copy of Djate's written statement of the occurrences entitled "Statement of Gerard Djate on Assault Events January 20, 2006".

49. On or about January 30, 2006, Djate hand-delivered two set of copies of Djate's letter to MPD Chief Charles Ramsey accompanied by Djate's written statement of the occurrences entitled "Statement of Gerard Djate on Assault Events January 20, 2006" and Djate's business card to MPD First District to the attention of MPD Officers Hinton (badge #1241) and/or Byrdik (badge # 1428) and/or whomever assigned MPD detective(s) and/or MPD First District Commander as requested for inclusion into the incident report.

50. On or about February 3, 2006, MPD Chief Charles Ramsey received by certified mail return-receipt requested his copy of Djate's letter to MPD Chief Charles Ramsey accompanied by Djate's written statement of the occurrences entitled "Statement of Gerard Djate on Assault Events January 20, 2006" and Djate's business card.

51. To date, on information and beliefs, MPD First District has not assigned any detective to handle this police brutality case.

52. On information and beliefs, all the relevant occurrences of this police brutality were caught on videotaped recording at the scene of the incident. However, despite unnumbered telephone calls, office visits, and a letter together with accompanying Djate's written statement of the occurrences sent to officials of the District of Columbia toward the end of January 2006, including but not limited, to Chief of MPD Charles Ramsey and the Commander of the MPD First District, the District of Columbia has done nothing in connection with this case.

11

53. On December 21, 2006, upon Djate's insistence on knowing about the status of this Police brutality case, Detective Adams from the MPD First District directed him to address all further inquiries to MPD-Security Management Operations Branch (MPD-SMOB), the licensing branch of the MPD in charge of supervising HAWK Special Police Officers, alleged to be located at the MPD Headquarters on the third floor.

54. On December 21, 2006, Djate followed those instructions from Detective Adams but at the MPD Headquarters on the third floor, Djate was told by another MPD Officer that MPD-SMOB was not in fact located there but instead at the Reeves Center at the corner of 14th and U Street NW.

55. On December 27, 2006, Djate visited the MPD-SMOB. After Djate explained in details the purpose of his visit to the attendant MPD-SMOB employee, the latter sent Djate away directing him back to the MPD First District claiming that Detective Adams provided wrong and misleading information to Djate since by internal policies, any such matters would not be handled by the MPD-SMOB.

56. On that same day, through a series of telephone call inquiries, Djate was directed to Lieutenant John Shelton of the MPD-SMOB who requested to see Djate immediately. Immediately after that telephone call, Djate returned to the MPD-SMOB and was received by Lieutenant Shelton who made copies of evidentiary documents provided him by Djate including the MPD police report, Djate's letter and written statement of the occurrences delivered eleven month earlier to MPD Chief Charles Ramsey and the Commander of the MPD First District, and photographs of Djate's sustained injuries.

57. During all relevant times the District of Columbia lacked an effective system for monitoring complaints against police officers for misconduct, and thus was unable to properly train and supervise and monitor any of its employed police officers.

12

58.  The District of Columbia City Council established the Civilian Complaint Review Board to provide a mechanism for public review of police misconduct.

59.  That system was held to be ineffective in the case of Cox v. District of Columbia.

60.  The District of Columbia then established a system of internal review as a method of monitoring police on citizen misconduct.

61.  The District of Columbia retained Booz-Allen & Hamilton, consultants, to evaluate, among other things, the system of internal review.

62.  According to a report prepared by Booz-Allen & Hamilton, the system of internal review, is ineffective in monitoring police misconduct because of a systemic defect in the system, namely, complaints about the police officers and the District of Columbia Metropolitan Police Department are investigated and evaluated and otherwise handled by the District of Columbia Metropolitan Police Department itself, instead of by an neutral, independent body.

63.  According to a report prepared by Booz-Allen & Hamilton, the system of internal review, as administered by the District of Columbia Metropolitan Police Department, is ineffective in monitoring police misconduct because the District of Columbia Metropolitan Police Department does not review or act on complaints filed with the system of internal review in a timely fashion, or, in the majority of cases, does not act at all.

64.  As a direct and proximate result of Defendants' conduct described above, Djate suffered and is likely to continue suffering injuries including: permanent injuries, pain and suffering, humiliation, indignity, medical costs and expenses, lost income, impairment of earning capacity, and property damage. Defendants' actions also have damaged Djate's reputation and his enjoyment of life.

### Count I - Assault and Battery

13

65.  Plaintiff Djate realleges and incorporates by reference all allegations set forth in the preceding Paragraphs of this Complaint.

66.  On January 20, 2006, at about 4:00 p.m., Plaintiff Djate was at the DMV at 301 C Street NW, Washington, DC, when he was violently assaulted and battered by Special Police officers Tim Delyons and Donte A. Slate. The assault and battery as aforesaid, was unprovoked and not in self-defense; it was willful, malicious, wanton, careless, intentional and negligent.

68.  As a result of the assault and battery as aforesaid, plaintiff Djate suffered serious physical and mental and emotional damages and injuries including lacerations and bruises.

69.  It is foreseeable that Plaintiff Djate will in the future incur further hospital and medical costs and expenses.

70. Plaintiff Djate has been permanently damaged.

### Count II – Intentional Infliction of Emotional Distress

71.  Plaintiff Djate realleges and incorporates by reference all allegations set forth *in* the preceding Paragraphs of this Complaint.

72.  Tim Delyons, Donte A. Slate, and Jane and John Does One Through Six, and all the other Defendants engaged in the conduct described above recklessly or with the intent of causing plaintiff Djate severe emotional distress.

73.  The conduct of Tim Delyons, Donte A. Slate, and Jane and John Does One Through Six, and all the other Defendants was extreme and outrageous.

74.  Plaintiff Djate suffered severe emotional distress, humiliation, indignity, injury to reputation, as a result of the conduct.

## Count III - Negligence

75. Plaintiff Djate incorporates as though restated each of the factual allegations stated in all of the preceding paragraphs.

76. Such conduct was negligent and in violation of the duty Tim Delyons, Donte A. Slate, and Jane and John Does One Through Six, and all the other Defendants owed to citizens to exercise due care in interacting with citizens.

77. In addition and more particularly, Defendants District of Columbia and Hawk One Security, Inc./Hawk One Security Special Police failed to exercise reasonable care in the hiring, training, supervision, and retention of Tim Delyons, Donte A. Slate, and Jane and John Does One Through Six, and DMV employees Jane and John Does One Through Six when they knew or should have known of the outrageous, extreme, and repeated misconduct of Tim Delyons, Donte A. Slate, and Jane and John Does One Through Six, other Hawk officers, and DMV employees Jane and John Does One Through Six in their interactions with citizens.

78. Defendants Tim Delyons, Donte A. Slate, and Jane and John Does One Through Six, and all the other Defendants' actions described above, directly and proximately caused Plaintiff Djate's physical injury, severe emotional distress, pains and sufferings, humiliation, indignity, and other injury as described above.

## Count IV- Liability of Defendants District of Columbia and Hawk One Security, Inc. for the torts of Tim Delyons, Donte Slade, and Jane and John Does One Through Six, in Respondeat Superior

79. Plaintiff Djate realleges and incorporates by reference all allegations set forth in the preceding Paragraphs of this Complaint.

80. Tim Delyons, Donte Slade, and Jane and John Does One Through Six, and DMV employees Jane and John Does One Through Six intentionally assaulted and battered Plaintiff Djate, and intentionally inflicted severe emotional distress upon him, and engaged in fabrication of evidence through the giving of false report of the occurrences, and maliciously injured him, as described above.

81. At all relevant times Tim Delyons, Donte Slade, and Jane and John Does One Through Six, and DMV employees Jane and John Does One Through Six were acting within the scope of their employment with Defendants District of Columbia and Hawk One Security, Inc., and asserting Defendant District of Columbia government's authority as duly authorized agents of Defendants District of Columbia and Hawk One Security, Inc.

82. Defendants District of Columbia and Hawk One Security, Inc., are liable under the doctrine of respondeat superior for the injury to Plaintiff Djate as described above, caused by the tortious acts of Tim Delyons, Donte Slade, and Jane and John Does One Through Six, and DMV employees Jane and John Does One Through Six.

Count V - Punitive Damages

83. Each of the individual defendants, Hawk One Security, Inc., and the District of Columbia are liable in punitive damages under common law for the conduct described above.

Count VI – Violation of the Civil Rights Act, 42 U.S.C. § 1983
Violation of the Fourth Amendment to the U.S. Constitution
(Tim Delyons, Donte Slade, and Jane and John Does One Through Six)

84. Plaintiff Djate incorporates as though restated each of the factual allegations stated in all of the preceding paragraphs.

85.   Plaintiff Djate seeks relief against Tim Delyons, Donte Slade, and Jane and John Does One Through Six under 42 U.S.C. Section 1983 in both their individual and official capacity.

86.   Tim Delyons, Donte Slade, and Jane and John Does One Through Six's conduct in assaulting, and battering Plaintiff Djate as they did, beating him, and engaging in fabrication of evidence through the giving of false incident report without justification, and using excessive and unreasonable force against him, and falsely accusing him of disruptive conduct constitutes an unreasonable seizure, in violation of the Fourth Amendment of the u.s. Constitution.

87.   The deprivations to Plaintiff Djate's Fourth Amendment rights were committed by Tim Delyons, Donte Slade, and Jane and John Does One Through Six while they were acting under color of state law or pursuant to the policy, custom and practice of defendant District of Columbia.

88.   Tim Delyons, Donte Slade, and Jane and John Does One Through Six's actions described above, directly and proximately caused the violations of Plaintiff Djate's Fourth Amendment rights.

89.   Tim Delyons, Donte Slade, and Jane and John Does One Through Six's actions described above were deliberate and intentional violations of Plaintiff Djate's Fourth Amendment rights and thus Tim Delyons, Donte Slade, and Jane and John Does One Through Six's actions described above are not protected by absolute or qualified immunity.

90.   Tim Delyons, Donte Slade, and Jane and John Does One Through Six's actions described above, directly and proximately caused Plaintiff Djate's physical injury, severe emotional distress, and pains and suffering and other injury as described above.

Count VII – Violation of the Civil Rights Act, 42 U.S.C. § 1983
Violation of the Fourth Amendment to the U.S. Constitution (Defendant District of Columbia – Failure to Appoint, Train, Supervise, Monitor, Promote, and to Keep from Harm)

17

91. Plaintiff Djate incorporates as though restated each of the factual allegations stated in all of the preceding paragraphs.

92. Plaintiff Djate seeks relief against Defendant District of Columbia under 42 U.S.C. § 1983.

93. Defendant District of Columbia failed to appoint, supervise, monitor, train, and and/or promote members of the District of Columbia Metropolitan Police Department and DMV-Adjudication Services who would enforce the laws and policies in effect in the District of Columbia. The District of Columbia acted, and failed to keep from harm and to act, intentionally, and with deliberate indifference to the rights of Mr. Djate and other citizens.

94. Defendant District of Columbia had both actual and constructive knowledge that DMV District of Columbia employees Jane and John Does One Through Six, Tim Delyons, Donte Slade, and Jane and John Does One Through Six, Special Police officers and duly authorized agents asserting local governmental authority, engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to Plaintiff Djate.

95. Defendant District of Columbia had a pattern of continued inaction in the face of DMV District of Columbia employees Jane and John Does One Through Six, Tim Delyons, Donte Slade, and Jane and John Does One Through Six and other police officers' documented widespread abuse of District of Columbia's citizens rights under the Fourth Amendment of the U.S. Constitution.

96. Defendant District of Columbia failed to train its employees and officers in the proper application of force, and the number and frequency of such violations made the need for further training plainly obvious to the policy makers of the District of Columbia.

97. Defendant District of Columbia's maintenance of a patently inadequate system of investigation of excessive force and other police misconduct complaints constitutes a custom or

18

practice of deliberate indifference to the rights of persons who come into contact with duly authorized agents Special Police Officers and District of Columbia MPD police officers.

98. Defendant District of Columbia's actions described above were deliberate and intentional violations of Plaintiff Djate's Fourth Amendment rights and thus Defendant District of Columbia's actions described above are not protected by absolute or qualified immunity.

99. Defendant District of Columbia took no steps to remedy the conduct of Tim Delyons, Donte Slade, and Jane and John Does One Through Six, and DMV employees described above.

100. Defendant District of Columbia's actions described above, directly and proximately caused Plaintiff Djate's physical injury, severe emotional distress and pains and sufferings and other injury as described above.

101. Defendant District of Columbia's failure to appoint, supervise, train, and/or promote members of the District of Columbia Metropolitan Police Department and DMV personnel who would enforce the laws in effect in the District of Columbia, directly and proximately resulted in the conduct of the special police officers described above and thus caused Plaintiff Djate physical injury, severe emotional distress, pains and sufferings, and other injuries as described above.

102. Defendant District of Columbia's actions, and failures to act, as described above, directly and proximately, and affirmatively caused the violations of plaintiff Djate' Fourth Amendment rights.

103. The deprivations to Plaintiff Djate's Fourth Amendment rights were committed by Defendant District of Columbia pursuant to the policy, custom and practice of Defendant District of Columbia.

## Count X - Punitive Damages

19

104. Each of the individual defendants, Hawk One Security, Inc., and the District of Columbia are liable in punitive damages under Section 1983 for the conduct described above.

## Requested Relief

NOW WHEREFORE, plaintiff Djate prays this court to order the relief requested above including:

1. Award plaintiff compensatory and consequential damages in an amount to be determined, but in no event less than $1,000,000;

2. Award plaintiff punitive damages in an amount to be determined, but in no event less than $1,000,000;

3. Award plaintiff any attorneys' fees and experts' fees and costs incurred in bringing this action under 42 U.S.C. § 1983;

4. Grant such other relief as this court deems just.

## JURY DEMAND

Plaintiff demands a jury of 6 on all claims set forth herein.

Dated: January 16, 2007                    Respectfully submitted,

Gerard Djate,
In Proper Person
2330 Good Hope Rd SE, #1222
Washington, DC 20020
Tel: (202) 460-0097/678-5941

CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

**I. (a) PLAINTIFFS**

GERARD DJATE                    *110CV*

**DEFENDANTS**

THE DISTRICT OF COLUMBIA, et al.

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    CLARKE
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES USE THE LOCATION OF THE TRACT OF

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

*2330 Good Hope Rd SE, # 122:*
*Washington, DC 20020*
*(in proper person (202/460-0097 or 678-5*

CASE NUMBER   1:07CV00100

JUDGE: Emmet G. Sullivan

DECK TYPE: Civil Rights (non-employm

DATE STAMP: 01/16/2007

*JURY ACTION*

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

O  1 U.S. Government Plaintiff
◉  3 Federal Question (U.S. Government Not a Party)
O  2 U.S. Government Defendant
O  4 Diversity (Indicate Citizenship of Parties in item III)

**III CI**
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | O 1 | O 1 | Incorporated or Principal Place of Business in This State | O 4 | O 4 |
| Citizen of Another State | O 2 | O 2 | Incorporated and Principal Place of Business in Another State | O 5 | O 5 |
| Citizen or Subject of a Foreign Country | O 3 | O 3 | Foreign Nation | O 6 | O 6 |

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

O **A. Antitrust**

☐ 410 Antitrust

O **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

O **C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff))
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))
**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

O **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

O **E. General Civil (Other)**     OR     ◉ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

*(5)*

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ⊗ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>⊗ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding    ○ 2 Removed from State Court    ○ 3 Remanded from Appellate Court    ○ 4 Reinstated or Reopened    ○ 5 Transferred from another district (specify)    ○ 6 Multi district Litigation    ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Section 1983 of the Civil Rights Act of 1871, as amended, 42 U.S.C. Section 1983, excessive and unreasonable use of force under color of state law.

**VII. REQUESTED IN COMPLAINT**    ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ To be determined    Check YES only if demanded in complaint    JURY DEMAND:    YES ☒    NO ☐

**VIII. RELATED CASE(S) IF ANY** NO.    (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE 01/15/07    SIGNATURE OF ATTORNEY OF RECORD ✗ _[signature]_

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.