## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GERARD DJATE,            )
                        )
        Plaintiff,       )
                        )
v.                         )
                        )       1:07CV00100 (EGS)
THE DISTRICT OF COLUMBIA, *et al.*,  )
                        )
        Defendants.     )
_____)

## DEFENDANT DISTRICT OF COLUMBIA'S FIRST AMENDED MOTION TO DISMISS AND/OR MOTION FOR SUMMARY JUDGMENT

Defendant District of Columbia (the "District"), by and through counsel, respectfully moves this Court, pursuant to Federal Rules of Civil Procedure 12(b)(6) and/or 56, to dismiss plaintiff's complaint and/or alternatively, to grant it summary judgment on all claims set forth in plaintiff's Complaint.  As grounds for this motion, the District asserts that:

1.      Plaintiff has failed to properly serve the District of Columbia pursuant to Fed. P. Civ. R. 4, and dismissal is appropriate.

2.      Plaintiff has failed to state a constitutional claim against the District of Columbia pursuant to 42 U.S.C. § 1983.  The District of Columbia is not liable for the alleged constitutional torts of its independent contractor, Hawk One Security, Inc., or its employees, and therefore dismissal is appropriate; and

3.      Plaintiff failed to provide written notice to the Mayor of the District of Columbia of his common law claims as required by D.C. Official Code §12-309.   Therefore, plaintiff cannot maintain his common law claims against this defendant.

A memorandum of points and authorities in support of this motion is attached hereto.

Respectfully submitted,

LINDA SINGER
Acting Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

/s/ Patricia A. Jones
PATRICIA A. JONES
Chief, General Litigation Sec. IV

/s/ Rachel R. Hranitzky
RACHEL R. HRANITZKY
Assistant Attorney General
441 Fourth Street, N.W., Sixth Floor North
Washington, D.C. 20001
(202) 442-9754; (202) 727-6295
rachel.hranitzky@dc.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

GERARD DJATE,                              )
                                          )
      Plaintiff,                       )
                                          )
v.                                        )
                                          )          1:07CV00100 (EGS)
THE DISTRICT OF COLUMBIA, *et al.*,       )
                                          )
      Defendants.                      )
_____)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**DEFENDANT DISTRICT OF COLUMBIA'S FIRST AMENDED MOTION TO DISMISS**
**AND/OR MOTION FOR SUMMARY JUDGMENT**

In support of its Motion to Dismiss, or alternatively, Motion for Summary Judgment,

defendant the District of Columbia (the "District") states as follows:

**I. Preliminary Statement**

On January 16, 2007, the plaintiff filed an eight-count complaint alleging common law

and constitutional claims against the District of Columbia, Hawk One Security, and various

named and unnamed employees of Hawk One Security, the D.C. Department of Motor Vehicles

(DMV), and the Metropolitan Police Department (MPD).  Plaintiff's claims include claims for

assault and battery against Hawk One Security special police officers Delyons and Slate;

intentional infliction of emotional distress against Hawk One special police officers Delyons and

Slate and six unnamed officers of Hawk One Security; negligence against all defendants

including the District for alleged failure to exercise reasonable care in the hiring, training,

supervision, and retention of Hawk One Security officers, unnamed Hawk One Security officers,

and unnamed DMV employees; a *respondeat superior* claim against the District and Hawk One

Security; punitive Damages against Hawk One Security and the District; alleged violation of 42

U.S.C. §1983 (excessive force under the Fourth Amendment) against Hawk One Security and its

officers; and alleged violation of 42 U.S.C. §1983 (Fourth Amendment) against the District for alleged failure to appoint, train, supervise, monitor, and/or promote members of MPD and DMV-Adjudication Services" and for failure to investigate and take corrective action against Hawk One Security special police officers and DMV employees as a result of the incident. Plaintiff seeks damages for his claims. *See* Complaint, generally.

Plaintiff alleges that on January 20, 2006, he was assaulted by Hawk One Security special police officers (SPO) after he refused to leave the DMV offices at 301 C Street, N.W., Washington, D.C. *See* Complaint, ¶¶32-33. Plaintiff avers that he was forcefully removed from the eastern side of the building by Hawk One Security officers (¶35), whereupon he ran around to the front of the building and re-entered the building through the MPD entrance to confront the special police officers and learn their identities (¶39). Nowhere in his complaint does plaintiff allege that he was assaulted by any employee of DMV or MPD. See Complaint, generally. After the alleged assault, plaintiff called 911 and MPD police officers responded to investigate. Complaint, ¶ 44. While plaintiff alleges that various DMV employees were rude to him prior to his removal from DMV, he makes no allegations about the alleged conduct of DMV employees other than to assert that the Hawk One Security officers were employees of the DMV. *See* Complaint, generally. Plaintiff complains that MPD First District has not assigned any detective to handle "this police brutality case." Complaint, ¶51.

Hawk One Security, Inc. is an independent contractor. On March 16, 2005, Hawk One Security, Inc., entered into a contract with the District to provide security services to the District. Under the terms of the contract, Hawk One Security, Inc,. agreed to provide "all trained labor, management, supervision, uniforms, supplies and equipment necessary to protect the District Government-owned and leased facilities…." A true and accurate copy of the relevant portions of the contract between Hawk One and the District is attached hereto as **Exhibit A** and incorporated

4

herein by reference. The Mayor has statutory authority to license Special Police Officers, including Hawk One Security's personnel. See DC Code §2-302.04. These officers are not District employees, but rather independent contractors. *See, e.g. Bauldock v. Davco Food, Inc.*, 622 A.2d 28 (D.C. 1993) (restaurant owner not liable for false arrest, assault or battery arising out of a patron's arrest by an off-duty police officer who was working as a security guard at the restaurant as security guard was independent contractor).

Plaintiff's alleged cause of action accrued on January 20, 2006. See Complaint, generally. The District of Columbia Office of Risk Management searched its records and has no record that the Mayor received any notice or letter from plaintiff, or someone on his behalf, informing the District of plaintiff's potential claim against the District. Although a police report was prepared about the subject incident, there is nothing in the police report that provides notice of any claim for damages against the District pursuant to D.C. Official Code §12-309.

## II. Argument

### A.    Standard for Dismissal Pursuant to SCR-Civil 12(b).

Dismissal pursuant to Fed. R. Civ. P. 12(b)(6) is appropriate when a moving party has failed to set forth a claim for which he/she is entitled to relief. A defendant is entitled to dismissal of the Complaint if it "appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *See Conley v. Gibson*, 355 U.S. 41, 45 (1957). The determination of whether a dismissal is proper must be made on the face of the pleadings alone. *See Telecommunications of Key West, Inc. v. United States,* 757 F.2d 1330, 1335 (D.C. Cir. 1985).

### B.    Standard for Dismissal Pursuant to SCR-Civil 56(c).

A motion for summary judgment should be granted if the moving party demonstrates that there are no genuine issues of material fact and that it is entitled to judgment as a matter of

law.  *Musa v. Continental Ins. Co*., 644 A.2d 999, 1001 (D.C. 1994).  Although the party

moving for summary judgment has the burden of demonstrating the absence of any material

facts and the right to judgment as a matter of law, the movant is not obligated to present

supporting evidence.  *Ferguson v. District of Columbia*, 629 A.2d 15, 19 (D.C. 1993).  Instead,

the moving party need only assert that there is a lack of necessary evidence to support a

plaintiff's case.  The burden then shifts to the non-moving party to show the existence of a

genuine issue of material fact.  *Id.*; *Beard v. Goodyear Tire & Rubber Co.*, 587 A.2d 195, 198

(D.C. 1991).

   The mere existence of a factual dispute by itself is not enough to bar summary judgment.

The party opposing the motion must show that there is a genuine issue of <u>material</u> fact. See

*Anderson v. Liberty Lobby*, 477 U.S. 242, 247 (1986).  To be material, the fact must be capable

of affecting the outcome of the litigation; to be genuine, the issue must be supported by

admissible evidence sufficient for a reasonable trier-of-fact to find in favor of the nonmoving

party. *See Id*. at 248; *Laningham v. United States Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987).

> "A motion for summary judgment should be granted if (1) taking all reasonable
> inferences in the light most favorable to the nonmoving party, (2) a reasonable juror,
> acting reasonably, could not find for the nonmoving party, (3) under the appropriate
> burden of proof."  *Galloway v. Safeway Stores, Inc.*, 632 A.2d 736, 738 (D.C. 1993)
> (*quoting Nader v. de Toledano,* 408 A.2d 31, 41 (D.C. 1979).  In deciding whether to
> grant summary judgment, this Court must conduct an independent review of the record
> and determine whether the record demonstrates that there is no genuine issue of fact from
> which a jury could find for the nonmoving party.  *Nader*, 408 A.2d at 42.

## C.     Plaintiff's Failure to Serve the District of Columbia With His Summons and Complaint Requires Dismissal of this Court Action Against the District.

Fed. R. Civ. P. 4(c) provides that a plaintiff bringing suit within the United States may serve a copy of the summons and complaint to the person to be served by any person who is not a party and who is at least 18 years of age by a United States marshal, deputy United States marshal, or other person or officer specially appointed by the court for that purpose.  Plaintiff merely mailed the summons and complaint via certified mail to the District without obtaining the signature of a person designated by the Office of the Mayor to receive service.  *See McLaughlin v. Fidelity Sec. Life Ins.,* 667 A.2d 105 (D.C. 1995), holding whether defendant received actual notice of the action is immaterial to the sufficiency of service of process.  Service by certified mail is improper where the certified mail is signed for by someone other than the party to the lawsuit who is not an agent authorized by appointment or by law to receive service of process.  *See, Cheng v. Cheung*, 710 A.2d 877 (D.C. 1998) (service upon the defendant's wife at the place of business rather than the residence was improper); *Morfessis v. Marvins Credit, Inc.¸*77 A.2d 178 (Mun. Ct. App. D.C. 1950) (service by certified mail on defendant at place of business where signed by secretary is improper without showing that secretary was agent authorized to receive service of process).  No agent authorized by appointment or by law to receive service of process on behalf of the Mayor or the Attorney General accepted service of process in this matter. *See* Office Order No. 2005-19, attached hereto as **Exhibit B**, and the most recent amendment thereto which is attached hereto as **Exhibit C**.  Because service was not properly effected upon Office of the Attorney General or the Mayor, this Court must dismiss this case as a matter of law.

**D.      Plaintiff Cannot Maintain A Fourth Amendment Claim Against the District of Columbia for the Actions of Hawk One Security.**

In Count VII of plaintiff's Complaint, he alleges that the District of Columbia violated his Fourth Amendment rights as secured by 42 U.S.C. § 1983. Plaintiff seeks to hold the District liable for its alleged faiure to appoint, train, supervise, monitor and promote members of MPD and DMV-Adjudication Services who would enforce the laws and policies in effect in the District of Columbia. Plaintiff avers that the District had knowledge that its DMV employees engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to him. Complaint, at ¶ 94. Plaintiff claims that the District had a pattern of continued inaction in the face of DMV employees Jane and John Does One through Six, Tim Delyons, Donte Slade, and John Does One through Six and police officers' documented widespread abuse of the District's citizens. Complaint, at ¶ 95. Plaintiff submits that the District failed to investigate and take corrective action against Hawk One Security special police officers and DMV employees as a result of the incident. Complaint, ¶¶ 91-103.

The District cannot be held liable under *Monell v. Dept. of Soc. Serv. of City of New York*, 436 U.S. 658, 690 (1978), for the actions of its employees and/or non-employees. In fact, municipal liability under 42 U.S.C. § 1983 is severely limited. *See Monell*, 436 U.S. at 690. Municipal liability results only when the municipality itself can be directly charged with fault for an unconstitutional deprivation. *See Wilson v. Lang*, 526 U.S. 603, 609 (1999); *Conn v. Gabbert*, 526 U.S. 286, 290 (1999); *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5 (1985); and *Baker v. McCollan*, 443 U.S. 137, 146-47 (1979), holding courts must address the threshold issue in any action brought under § 1983: "whether the plaintiff has alleged the deprivation of an actual constitutional right at all." Therefore, municipal liability results only when the policy or custom fairly attributable to the municipality is the "moving force" behind

the particular constitutional violation.  *See Polk County v. Dodson*, 454 U.S. 312, 326 (1981)

(citing *Monell*, 436 U.S. at 694).

According to plaintiff, the alleged predicate constitutional violation was the excessive

force used by Hawk One Security officers in removing him from the building in violation of his

Fourth Amendment rights to be free from unreasonable search and seizure.  Complaint, ¶¶ 32-33.

It is undisputed that no DMV or MPD employee assaulted plaintiff or used excessive force.

Complaint, ¶¶ 32-33.  Therefore the District's alleged failure to train, supervise and/or monitor

DMV or MPD employees bear no causal relationship to plaintiff's alleged injuries.  The District

bears no duty to train, supervisor and/or monitor Tim Delyons or Donte Slade, both Hawk One

Security officers who allegedly used excessive force against plaintiff.  See Complaint, at ¶   In

the District of Columbia, the general rule "is that when [someone or some entity] hires another to

do certain work, reserving no control over either the work or the workmen, a relationship of

contractee and contractor exists (as opposed to master and servant) and the contractee is not

liable for injuries to a third party resulting from the work of the independent contractor**."** *W.M.*

*Schlosser Co. v. Maryland Drywall Co.*, 673 A.2d 647, 651 (D.C. 1996), *citing Washington*

*Metro. Area Transit Auth. v. L'Enfant Plaza Prop., Inc.,* 448 A.2d 864 (D.C. 1982) ("general rule

is that an individual or corporation is not liable for injuries resulting from the work of an

independent contractor.")  "This general rule encompasses the view that those using independent

contractors should not be held responsible for activities they do not control and often lack the

knowledge and resources to direct."  *Id*. citing RESTATEMENT (SECOND) OF TORTS §409, cmt. b

(1985).

The U.S. Supreme Court requires a plaintiff seeking to impose liability on a municipality

under § 1983 to demonstrate that "through its *deliberate* conduct, the municipality was the

'moving force' behind the injury alleged."  *Board of the County Commissioners of Bryan County*

*v. Brown*, 520 U.S. 397, 404 (1997).  The D.C. Circuit has equated "moving force" with "proximate cause."  *See Morgan v. District of Columbia*, 824 F.2d 1049, 1058 (D.C. Cir. 1987). Since neither Tim Delyons nor Donte Slade are District of Columbia employees, plaintiff cannot establish that any District custom, practice or policy was the proximate cause of his injuries, and his Fourth Amendment claim against the District fails as a matter of law.

### E.    Plaintiff Failed to Provide Notice of his Common Law Claims against the District of Columbia Pursuant to D.C. Official Code § 12-309.

In Counts III and IV, plaintiff alleges that the District of Columbia negligently failed to "exercise reasonable care in the hiring, training, supervision, and retention of Hawk One Security officers, unnamed Hawk One Security officers, and unnamed DMV employees."  Additionally, plaintiff seeks to hold the District vicariously liable for the assault and intentional infliction of emotional distress by Hawk One Security.  See Complaint, Counts I and II.  In order to maintain any action against the District of Columbia for damages, a claimant must satisfy the mandatory notice requirement of D.C. Official Code § 12-309 (2001 ed.).  See, *Hill v. District of Columbia*, 345 A.2d 867, 869 (D.C. 1975).  Section 12-309 provides that:

> An action may not be maintained against the District of Columbia
> for unliquidated damages to person or property unless, within six
> months after the injury or damage was sustained, the claimant, his agent,
> or attorney has given notice in writing to the Mayor of the approximate
> time, place, cause, and circumstances of the injury or damage.

As indicated by a long line of cases, §12-309 is to be strictly construed.  *See Pitts v. District of Columbia*, 391 A.2d 803, 807 (D.C. 1978); *Toomey v. District of Columbia*, 315 A.2d 565, 566 n.1 (D.C. 1974);  *District of Columbia v. World Fire & Marine Ins. Co.*, 68 A.2d 222, 225 (D.C. 1949); *Boone v. District of Columbia*, 294 F. Supp. 1156, 1157 (D.D.C. 1968).  "... [C]ompliance with the statutory notice requirement is mandatory," and is a "condition precedent to filing a suit against the District." *Hill*, 345 A.2d at 869; *Gwinn v. District of Columbia*, 434 A.2d 1376 (D.C.

1981).  More important, notice must be **received** within six months of the events which allegedly have caused a claimant's injury, not merely mailed or transmitted to the District within six months. *DeKine v. District of Columbia*, 422 A. 2d 981, 984 (D.C. 1980) (emphasis added).  Notice received even one day past due is considered untimely, and completely bars recovery against the District.  *Id.* at 986.

In this case, plaintiff has failed to satisfy the statutory requirements of notifying the Mayor of his intent to file a claim against the District within six months of the alleged incident.  In his Complaint, plaintiff alleges that he was injured on January 20, 2006.  Therefore, plaintiff was required to notify the Mayor of his potential claims against the District on or before July 20, 2006.  The Office of Risk Management has no record of receiving any notice letter informing the Mayor of plaintiff's intent to file a claim against the District.  *See* Affidavit of Mia Powell Liley, hereto attached as **Exhibit D**.  Plaintiff's failure to notify either the Mayor of his potential claim entitles the District to judgment as a matter of law.

Plaintiff's complaint alleges that he sent letters concerning the incident to the Department of Motor Vehicle's Director and the D.C. Metropolitan Police Department Chief of Police.  See. Complaint, ¶¶ 48-49.  Plaintiff does not allege that he sent written notice to the Mayor of the District of Columbia.  Complaint, generally.  These letters do not satisfy the strict requirements of § 12-309.  See *Hunter v. District of Columbia*, 943 F.2d 69 (D.C. 1991), holding that notice to subordinate official did not take place of written notice to District of Columbia itself with respect to pretrial detainee's claim of negligent supervision of police officers.

Although a Metropolitan Police Department report, made in the ordinary course of business, may satisfy the notice requirement of the statute in lieu of a written letter to the Mayor, the police report must do more than simply report an event.  It must contain the same type of information required for written notice to the Mayor, i.e. the time, location, cause and

circumstances of injury that gives rise to plaintiff's potential claims against the District.   In this case, a police report was prepared regarding the incident that is the subject of this litigation. Within the report, plaintiff alleged that Hawk One Security officers, Donte Slate and Tim Delyons, assaulted him. *See Police Report* attached hereto as **Exhibit E**.  The report is insufficient to satisfy the statute's notice requirements.  There are no facts contained in the police report that provides notice of a claim against the District of Columbia for negligent supervision or negligent training of Hawk One Security, or for the alleged assault by the Hawk One Security employees.

In *Washington v. District of Columbia*, 429 A.2d 1362 (D.C. 1981), the Court set forth the specific information that §12-309 demands with respect to the "cause" element:

> The written notice or police report must disclose both the factual cause of injury and a reasonable basis for anticipating legal action as a consequence.  Such notice would suffice, therefore, if it either characterized the injury and asserted the right to recovery, or – without asserting a claim – described the injuring event with sufficient detail to reveal, in itself, a basis for the District's potential liability.

The security officers who plaintiff claims assault him are employed by Hawk One Security, Inc., not the District of Columbia.  As such, the information in the report provides no notice to the District as to why it would be liable for plaintiff's alleged injuries.  Accordingly,

## F.      Plaintiff is Not Entitled to Punitive Damages Against the District.

Plaintiff seeks punitive damages against the District of Columbia.  See Complaint, ¶¶83 and 104.     However, punitive damages may not be awarded against the District of Columbia. *See Finkelstein v. District of Columbia*, 593 A.2d 591, 599 (D.C. 1991) (". . . punitive damages may not be awarded against the District of Columbia") (citing *Smith v. District of Columbia*, 336 A.2d 831, 832 (D.C. 1975); *see also Ramos v. District of Columbia Dep't of Consumer and Regulatory Affairs*, 601 A.2d 1069, 1074, n.9 (D.C. 1992).  Both the U.S. Supreme Court and the District Courts in this jurisdiction have determined that, absent an express statutory mandate,

punitive damages are not recoverable against municipalities such as the District. *See City of Newport v. Fact Concerts*, 453 U.S. 247, 260, n.21; *Smith*, 336 A.2d at 832; *Teart v. Washington Metropolitan Area Transit Authority*, 686 F. Supp. 12 (D.D.C. 1988)[1]; *see also Excavation Construction, Inc. v. Washington Metropolitan Area Transit Authority*, 624 F. Supp. 582, 588 (D.D.C. 1984) (D.C. law does not authorize award of punitive damages against a governmental entity in absence of statute).

In 1975, the D.C. Court of Appeals observed that there was no statute expressly authorizing an award of punitive damages against the District. In fact, the D.C. Council has legislated to protect the District from punitive awards, even where the tortious conduct may be outrageous and very harmful. *See* D.C. Code § 2-423 (2001 ed.) (holding punitive damages may not be awarded for unjust criminal imprisonment).) Accordingly, plaintiff's punitive damages claim against the District must be dismissed as a matter of law.

### G.    The Public Duty Doctrine bars Plaintiff's claims against the District.

Under the public duty doctrine, the District has no duty to provide public services to any particular person. *Hines v. District of Columbia,* 580 A.2d 133, 136 (D.C. 1990). Accordingly, the District has no duty to investigate and take corrective action against the Hawk One Security employees merely because plaintiff asked it to. *See Nichol v. District of Columbia,* 444 A2d 1 (D.C. 1981)(en banc)(police under no duty to prepare criminal report); *Auto World Inc. v. District of Columbia*, 627 A.2d 11 (D.C. 1993)(no duty to provide motor vehicle registration information).

There exists a limited exception to the public duty doctrine. The doctrine is inapplicable if a "special relationship" exists between the individual and the District and there has been

---

[1] The District Court noted that the "exceptional circumstances" language in *Smith* was mere dicta, not binding upon the Court. That Court further observed, however, that no case had determined the "exceptional circumstances" threshold to have been satisfied and went on to state that it would not set the baseline.

"reliance" by the injured party upon that relationship. *Flemmings v. District of Columbia*, 719 A.2d 963 (D.C. 1998). The terms "special relationship" and "reliance" have been construed narrowly in this jurisdiction. *See generally, Nealon v. District of Columbia,* 669 A2d 685 (D.C.1995)(public duty doctrine precludes lawsuit based upon District's failure to provide sufficient water pressure for fire hydrants).

Thus, in *Johnson v. District of Columbia,* 580 A.2d 140 (D.C. 1990), a heart attack victim called the District's 911 number and requested emergency medical care.  Although the dispatcher assured the caller that an ambulance would be sent, none was dispatched until two subsequent calls and thirty minutes had elapsed. When the late arriving crew finally appeared, the treatment that was rendered may have actually worsened the patient's condition.  In reversing the trial judge's grant of summary judgment, the appellate court held that the mere calling of the ambulance, even when coupled with the dispatcher's promise that help was on the way, neither created a "special relationship" nor gave rise to "reliance" on the part of the heart attack victim. The court held, however, that allegations that treatment rendered on the scene actually worsened plaintiff's condition did take the claim beyond the ambit of the public duty doctrine.  The court reasoned that such "affirmative negligence" created both a "special relationship" (i.e. medical provider and patient) and justifiable "reliance"(i.e. reliance on the emergency crew not to worsen her condition).

A  police officer's failure to assign detectives to investigate a police report does not constitute the degree of "affirmative negligence" necessary to create either a "special relationship" or detrimental "reliance". *See Nichol v. District Metropolitan Police Department*, 444 A.2d 1 ( D.C. 1981) (en banc). In Nichol, a man was assaulted in his car and the police came to his assistance. At the behest of the police officer, the victim ceased efforts to obtain the identity of his attackers. Because the officer failed to obtain the information himself, the victim

was unable to perfect a lawsuit against his assailants. Plaintiff's subsequent lawsuit against the District of Columbia for failure to file a crime report was dismissed by the trial court for failure to state a claim upon which relief could be granted. In affirming the defense judgment, the Court of Appeals held that that the officer's failings did not create a "special relationship" with the crime victim.

Therefore, plaintiff's complaint should be dismissed because it fails to state a claim upon which relief may be granted. As demonstrated by the above-cited cases, the police officer was not under a duty to plaintiff to provide him with detectives to investigate his claim or to investigate the claim in accordance with plaintiff's expectations. As a result his claim is not cognizable at law.

### III. Conclusion

For the reasons stated above, the District of Columbia respectfully requests that this Honorable Court grant its Motion to Dismiss and/or Motion for Summary Judgment.

Respectfully submitted,

LINDA SINGER
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

/s/ Patricia A. Jones
PATRICIA A. JONES
Chief, General Litigation Sec. IV

/s/ Rachel R. Hranitzky
RACHEL R. HRANITZKY
Assistant Attorney General
441 Fourth Street, N.W., Sixth Floor North
Washington, D.C. 20001
(202) 442-9754; (202) 727-6295
rachel.hranitzky@dc.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GERARD DJATE, | ) |
| | ) |
|      Plaintiff, | ) |
| | ) |
| v. | ) |
| | )     1:07CV00100 (EGS) |
| THE DISTRICT OF COLUMBIA, et al., | ) |
| | ) |
|      Defendants. | ) |
| _____ | ) |

## DISTRICT OF COLUMBIA'S STATEMENT OF MATERIAL UNDISPUTED FACTS

In support of its Motion for Summary Judgment, the District of Columbia herein submits its Statement of Material Undisputed Facts

1.     Plaintiff's alleged cause of action accrued on January 20, 2006.  See Complaint, ¶¶32, 33.

2.     The District of Columbia Office of Risk Management has no record that the Mayor received a notice letter from plaintiff or from someone on plaintiff's behalf informing the District of plaintiff's potential claim against the District.  *See* **Exhibit D**.

Respectfully submitted,

LINDA SINGER
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

/s/ Patricia A. Jones
PATRICIA A. JONES [428132]
Chief, General Litigation, Section IV

/s/ Rachel R. Hranitzky
RACHEL R. HRANITZKY
Assistant Attorney General
441 Fourth Street, N.W., Sixth Floor North
Washington, D.C. 20001
(202) 442-9754; (202) 727-6295
rachel.hranitzky@dc.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GERARD DJATE, | ) |
| | ) |
|      Plaintiff, | ) |
| | ) |
| v. | ) |
| | )     1:07CV00100 (EGS) |
| THE DISTRICT OF COLUMBIA, <u>et al.</u>, | ) |
| | ) |
|      Defendants. | ) |
| _____ | ) |

## <u>ORDER</u>

Upon consideration of the defendant District of Columbia's First Amended Motion to

Dismiss, Memorandum of Points and Authorities in support thereof, and the plaintiff's

opposition thereto, if any, it is by the Court this _____ day of _____, 2007,

ORDERED: that Defendant's Motion to Dismiss is GRANTED for the reasons set forth in its

motion; and it is,

FURTHER ORDERED:  that this case is hereby dismissed against the District.


_____
Judge Presiding, D.C. District Court

17

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

GERARD DJATE,            )
                      )
      Plaintiff,        )
                      )
v.                    )
                      )         1:07CV00100 (EGS)
THE DISTRICT OF COLUMBIA, et al.,  )
                      )
      Defendants.      )
_____)

## **ORDER**

Upon consideration of the defendant District of Columbia's Motion for Summary

Judgment, Memorandum of Points and Authorities in support thereof, and the plaintiff's thereto,

if any, it is by the Court this _____ day of _____, 2007,

ORDERED: that Defendant's Motion for Summary Judgment is GRANTED for the reasons

set forth in its motion; and it is,

FURTHER ORDERED:  that summary judgment is hereby granted in favor of the District

of Columbia.


_____
Judge,
United States District Court for the District
of Columbia

18

# EXHIBIT A

# SOLICITATION, OFFER, AND AWARD

| | 1. Market   Set-Aside | Page of Pages |
|---|---|---|
| | | 1    61 |

| 2. Contract Number | 3. Solicitation Number | 4. Type of Solicitation | 5. Date Issued | 6. Requisition/Purchase Number |
|---|---|---|---|---|
| POAM-2004-D-0015-DW | POAM-2004-R-0015-DW | [ ] Sealed Bid (IFB) [X] Sealed Proposal (RFP) | 4-Aug-04 | |

**6a. Caption** City-Wide Security Services

| 7. Issued By                                    Code | 8. Address Offer To (if other than line 7) |
|---|---|
| Office of Contracting and Procurement Construction, Design and Building Renovation Commodity Group 441 4th Street, N.W. - Suite 760 South Washington, DC 20001 | |

NOTE: In sealed bid solicitations "Offer" and "Offeror" means "Bid" and "Bidder"

## SOLICITATION

9. Sealed bid in original and _____ 5 _____ copies for furnishing the supplies or services in the Schedule will be received at the place specified in item 8, or if hand carried, in the

depository located in    441 4th Street, N.W., Suite 703 South Bid Counter    until    2:00 p.m.  local time    7-Sep-04
                                                                                                      (Hour)              (Date)

CAUTION: Late Submissions, Modifications and Withdrawals: See 27 DCMR Chapters 15 and 16 as applicable. All offers are subject to all terms and conditions contained in this solicitation.

| 10. For Information Contact | A. Name | B. Telephone (No Collect Calls) | | | C. E-mail Address |
|---|---|---|---|---|---|
| | | (Area Code) | (Number) | (Ext) | |
| | Diane B. Wooden | 202 | 724 | 3846 | diane.wooden@dc.gov |

### 11. Table of Contents

| (X) | Section | Description | Pages | (X) | Section | Description | Pages |
|---|---|---|---|---|---|---|---|
| | | **PART I - THE SCHEDULE** | | | | **PART II - CONTRACT CLAUSES** | |
| | A | Solicitation/Contract Form | 1 | | I | Contract Clauses | 37 |
| | B | Supplies or Services and Price/Cost | 2 | | | **PART III - LIST OF DOCUMENTS, EXHIBITS AND OTHER ATTACHMENTS** | |
| | C | Description/Specifications/Work Statement | 10 | | J | List of Attachments | 41 |
| | D | Packaging and Marking | 19 | | | **PART IV - REPRESENTATIONS AND INSTRUCTIONS** | |
| | E | Inspection and Acceptance | 20 | | K | Representations, Certifications and Other Statements of Offerors | 42 |
| | F | Deliveries or Performance | 22 | | | | |
| | G | Contract Administration Data | 25 | | L | Instructions, Conditions & Notices to Offerors | 47 |
| | H | Special Contract Requirements | 29 | | M | Evaluation Factors for Award | 56 |

## OFFER

12. In compliance with the above, the undersigned agrees, if this offer is accepted within _____ 90 _____ calendar days from the date for receipt of offers specified above, to furnish any or all items upon which prices are offered at the price set opposite each item, delivered at the designated point(s), within the time specified in the schedule.

| 13. Discount for Prompt Payment | 10 Calendar days % | 20 Calendar days % | 30 Calendar days % | _____ Calendar days % |
|---|---|---|---|---|

| 14. Acknowledgement of Amendments (The offeror acknowledges receipt of amendments to the SOLICITATION for offerors and related documents numbered and dated): | Amendment Number | Date | Amendment Number | Date |
|---|---|---|---|---|

| 15A. Name and Address of Offeror | Code _____   Facility _____ | 16. Name and Title of Person Authorized to Sign Offer/Contract |
|---|---|---|
| HAWK ONE SECURITY, INC. 9331 H ST., N.W. - SUITE 600 WASHINGTON, DC 20005 | | TYRONE THOMPSON PRESIDENT |

| 15B. Telephone | | | 15 C. Check if remittance address is different from above - enter address in Schedule Section K, | 17. Signature | 18. Offer Date |
|---|---|---|---|---|---|
| (Area Code) | (Number) | (Ext) | | | 3/28/05 |

## AWARD (TO BE COMPLETED BY GOVERNMENT)

| 19. Accepted as to Items Numbered | 20. Amount | 21. Accounting and Appropriation |
|---|---|---|
| | $14,199,132.44 | |

| 22 | [ ] Award - DC OCP Form 201 not required [ ] Negotiated Agreement - DC OCP Form 201 must be executed | 23. Submit invoices to Address Shown in (2 copies unless otherwise specified) | Item |
|---|---|---|---|

| 24. Administered By (if other than item 7)    Code | 25. Reserved for future use |
|---|---|

| 26. Name of Contracting Officer (Type or Print) | 27. Government of the District of Columbia | 28. Award Date |
|---|---|---|
| | (Signature of Contracting Officer) | 5/6/05 |

Contract No. POAM-2004-D-0015-DW
City-Wide Security Services

## SECTION C

## DESCRIPTION/SPECIFICATIONS/WORKSTATEMENT

**C.1**    **INTRODUCTION**

PSD has been charged to protect most of the government-owned and leased facilities, the employees of these facilities, and the citizens of the District of Columbia visiting them. The PSD mandate to protect and preserve District owned and leased properties and its supporting workforce has heightened since the creation of the Department of Homeland Security.

**C.2**    **SCOPE OF WORK**

**C.2.1**    PSD has a requirement for multiple contractors to provide all trained labor, management, supervision, uniforms, supplies and equipment necessary to protect the District Government-owned and leased facilities listed in **Attachment J.1**.

**C.2.2**    The contractor shall, deter and report damage, pilferage, removal, misuse, larceny, theft, or other improper or unlawful threats to, or disposition of, District government or personal property; discover and detain persons attempting to gain unauthorized access to the property or secured areas; be in full uniform and ready to begin work promptly at the start of their shift; and remain on the job in full uniform until the end of the full tour of duty.

**C.2.2**    The contractor shall provide manpower to cover all posts and duty hours as outlined in **Attachment J.1**. No employee of the contractor shall provide more than twelve (12) hours of service on one (1) or more contracts in a twenty-four (24) hour period unless the work periods are separated by an eight (8) hour non-duty period. This limitation may be waived by the Contracting Officer's Technical Representative (COTR) in emergency situations, which are beyond the control of the contractor such as weather conditions that prevent the next shift from getting to the building, civil disturbance and bombing. Written confirmation of a waiver must be obtained from the COTR for each occurrence.

Contract No. POAM-2004-D-0015-DW
City-Wide Security Services

**C.3**    **APPLICABLE DOCUMENTS**

| Document Type | Version |
|---|---|
| District of Columbia Municipal Regulations, DCMR, Title 6A | Latest |

**C.4**    <u>**DEFINITIONS**</u>

For the purpose of this solicitation the following definitions shall apply:

**C.4.1**    **Guard I  (Unarmed Security Guard)**  - Shall protect property from theft or damage or persons from hazards or interference.  Duties shall include but not limited to serving at a fixed post, making rounds on foot or by motor vehicle, escorting persons on property and helping visitors and customers by answering questions and giving directions.  Guards may be armed with a police baton.  At no time shall a security guard be required to carry a weapon, search personnel, detain personnel or affect an arrest.  This reference is made to correlate the security guard position in this solicitation to Guard I as applicable to the Department of Labor's Wage Determination, No: 1994-2103, Revision No: 32.  **(Attachment J.2).**

**C.4.2**    **Guard II  (Commissioned Special Police Officer, Unarmed)** - Shall possess arrest powers and be trained in the use of  batons, self-protective protection techniques, patrol procedures, burglary prevention and all other Basic Training course requirements.   Special Police Officers must meet the qualifications as stipulated in the most recent version of the District of Columbia Municipal Regulations, DCMR, Title 6A.  This reference is made to correlate the Commissioned Special Police Officer position in this solicitation to Guard II as applicable to the Department of Labor's Wage Determination, No: 1994-2103, Revision No. 32 **(Attachment J.2).**

**C.4.3**    **Guard II  (Commissioned Special Police Officer, Armed)** – Shall include all of the requirements listed in C.4.2 and shall also be trained and certified in the use of firearms.  This reference is made to correlate the Commissioned Special Police Officer position in this solicitation to Guard II as applicable to the Department of Labor's Wage Determination, No: 1994-2103, Revision No. 32 **(Attachment J.2).**

**C.4.4**    **Shift Supervisor (Guard II)** – A person on each shift designated in writing by the Contractor, to oversee the contractor's security staff.

**C.4.5**    **Watch Command** – The Watch Command is the 24 hour PSD command center located at 1350 Pennsylvania Avenue, N.W., Washington, DC.

Contract No. POAiM-2004-D-0015-DW
City-Wide Security Services

**Minimum Qualifications** - Shall include the qualifications in C.5.1, C.5.2 and C.5.3 and in addition the following:

(1) Shall have a minimum of three (3) years of experience in field supervision, civilian community law enforcement, military service, government law enforcement, and, or security of commercial or industrial guard services.

(2) Shall have completed the training specified in Paragraphs C.7.3 through C.7.5. The designated persons shall have the ability to successfully manage ten (10) or more persons in the field of law enforcement or security, as it pertains to a structural work environment.

Resumes shall be submitted to the COTR for all personnel assigned to supervisory positions ten (10) days prior to commencement of services.

**C.5.5    Relief Guards – Guard I or II**

**Minimum Qualifications** - Shall include the qualifications in C.5.1, C.5.2 and C.5.3 depending on the post.

The contractor shall assign relief guards to relieve other security employees at assigned posts for breaks. Each security employee shall receive a half hour break each day. A relief guard may be a Guard I or Guard II depending upon the post requirement. Relief guards shall take complete charge of the duties from the employee he or she relieves, including the Activity Log Book and all other equipment maintained at the post.

**C.6    HEALTH AND PHYSICAL FITNESS REQUIREMENTS**

The contractor shall ensure that all employees assigned are in good general health without physical defects or abnormalities, which would interfere with the performance of duties. Evidence of physical fitness shall be determined by passing the physical examination administered by a licensed physician during the Metropolitan Police Department (MPD), Security Officer Management Branch (SOMB) certification/commission process. The SOMB is located at 2000 14th Street, N.W., 3rd Floor, Washington, DC.

**C.7    TRAINING**

**C.7.1**    The contractor shall be responsible for all training of their employees who will be performing under this contract. The time or payment for attending contract required training shall not be billable as a separate cost item under this requirement. Lesson plans and outlines for each block of instruction shall be submitted with the Technical Proposal (See Paragraph L.3).

**C.7.2**    The contractor shall ensure that all employees performing on this contract have completed the 47-hour Basic Training Curriculum listed in C.7.3 prior to

Contract No. POAM-2004-D-0015-DW
City-Wide Security Services

## SECTION E

## INSPECTION AND ACCEPTANCE

E.1    The inspection and acceptance requirements for the resultant contract will be governed by the Inspection of Services Clause in Section 7 of the Government of the District of Columbia's Standard Contract Provisions for use with Supplies and Services Contracts, dated April, 2003, **Attachment J.3.**

E.2    The contractor is responsible for the day-to-day inspection and monitoring of all contractor work performed to ensure compliance with the contract requirements. The results of all inspections conducted by the contractor shall be documented in the Security Post Inspection Report to be given to the COTR on the last workday of each month. PSD shall conduct random inspections of the facilities to ensure contract compliance.

E.3    The contractor shall submit a weekly Corrective Action Report to the COTR outlining the steps and procedures taken to correct all issues identified in the Security Post Inspection Report.

## Requirements, Standards and Quality Assurance

| REQUIREMENTS | STANDARD | QUALITY ASSURANCE |
|---|---|---|
| 1. Operate Magnetometers, X-Ray Machines Systems, CCTV Camera Monitors | Assure that all bags, briefcases, employees and visitors pass through metal detectors and Identification checked. Detain persons attempting to gain unauthorized access to the property. | Random Inspection by Protective Services personnel and contract supervisors. Reports filed daily. Daily review by facility liaison. |
| 2. Perform Roving Patrols | Patrols performed in accordance with routes and schedules established in the Post Orders | Random Inspection by Protective Services personnel and contract supervisors. Reports filed daily. Daily review by facility liaison. |
| 3. Enforce Building Rules and Regulations | Enforce Posted Building Rules and Regulations as they pertain to occupants and visitors to include parking controls if applicable. | Random Inspection by Protective Services personnel and contract supervisors. Reports filed daily. Daily review by facility liaison. |

# EXHIBIT B

**GOVERNMENT OF THE DISTRICT OF COLUMBIA**
OFFICE OF THE ATTORNEY GENERAL

**ATTORNEY GENERAL**

Office Order No. 2005-19

SUBJECTS:  Designation of employees authorized to receive service of process on behalf of the Attorney General for the District of Columbia.

Pursuant to Reorganization Order No. 50 of June 26, 1953, as amended, the following employees in the Civil Litigation Division, Office of the Attorney General for the District of Columbia, are designated to receive service of process on behalf of the Attorney General (formerly the Corporation Counsel) when service is required to be made on the Attorney General or the District pursuant to Rule 4(j) of the Civil Rules of the Superior Court or pursuant to Mayor's Order:

    Darlene Fields, Secretary
    Tonia Robinson, Legal Assistant
    Gale Rivers, Secretary

In the absence of these three individuals, the Deputy or the Assistant Deputy of the Civil Litigation Division may also accept service of process.

An employee receiving service of process pursuant to this Order shall note the time and date of receipt on the document, and shall forward all papers served on the employee to the Civil Litigation Division for docketing.

This Order will take effect immediately and supersedes all previous Orders, including Office Order No. 4-91 (May 17, 1991), to the extent of any inconsistency.

Robert J. Spagnoletti
Attorney General

Dated this 6th day of June, 2005

# EXHIBIT C

# Government of the District of Columbia
### Office of the Secretary of the District of Columbia

Dr. Stephanie D. Scott
Acting Secretary of the District of Columbia

## MEMORANDUM

**TO:**     Mr. George Valentine
             Deputy Attorney General
             Civil Litigation Division
             Office of the DC Attorney General

**FROM:**    Dr. Stephanie D. Scott
             Acting Secretary of the District of Columbia

**DATE:**     January 16, 2007

**SUBJECT:** Designation of Staff to Handle/ Accept Legal Correspondence
             (Summons, Subpoenas, Civil Actions)

In accordance with Mayor's Order 2004-77, dated May 14, 2004, the memorandum serves to notify the Office of the Attorney General that the employees named below are, herewith, designated to received legal correspondence on behalf of the Mayor/Secretary of the District effective January 12, 2007.

- Tabatha Braxton, Staff Assistant, Office of the Secretary
- Arlethia Thompson, Executive Assistant, Office of the Secretary
- Erica Easter, Chief of Staff, Office of the Secretary

Should you have any questions, please do not hesitate to contact me. I can be reached at (202) 727-6306.

Cc:  The Mayor's Correspondence Unit
      Peter Nickels, General Counsel to the Mayor
      Linda Singer, Attorney General

# EXHIBIT D

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GERARD DJATE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )     1:07CV00100 (EGS) |
| THE DISTRICT OF COLUMBIA, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## AFFIDAVIT OF MIA POWELL LILEY

I, MIA POWELL LILEY, being duly sworn, states that the following is true to the best of my knowledge, information and belief:

1.  I am the Manager, Settlements and Judgments for the Tort Liability Division, District of Columbia Office of Risk Management.  The Tort Liability Division receives, processes and investigates potential claims against the District of Columbia, pursuant to D.C. Official Code § 12-309 (2001 ed.).  The Office of Risk Management commenced to receive potential claims on January 15, 2004.

2.  Receipt of written notice of claims against the District of Columbia, are forwarded directly to the Tort Liability Division for processing.  When the Tort Liability Division receives notices of claims either from the Mayor's Office or directly, the Tort Liability Division records the receipt of such notice in its claims management system.

3.  Claims previously handled by the Claims Unit for the Office of the Attorney General still under investigation as of January 15, 2004, were also transferred to the Office of Risk Management and recorded in its claims management system.

4.  I have conducted a diligent search of the records placed in the Risk Management system in the DC Office of Risk Management.  The result of this search has revealed that

**EXHIBIT D**

the Tort Liability Division of the District of Columbia Office of Risk Management, has

received no claim notice from GERARD DJATE that referred to claims described in the

complaint in Civil Action No. 1:07CV00100 (EGS) in reference to alleged claims of

assault and battery, intentional infliction of emotional distress, negligence, respondeat

superior, and civil rights and constitutional violations by the DC Metropolitan Police

Department and the DC Department of Motor Vehicles on January 20, 2006.

MIA POWELL LILEY

DISTRICT OF COLUMBIA, ss:

I, Susana Suarez, a Notary Public in and for the District of Columbia,

do hereby certify that MIA POWELL LILEY , whose name is signed to the foregoing

affidavit, bearing the date of the 19 day of March, 2007, personally appeared before

me and executed the said release, and acknowledged the same to be her act and deed.

Given under my hand and official seal this 19 day of March, 2007.

NOTARY PUBLIC

My Commission Expires:

SUSANA SUAREZ
NOTARY PUBLIC OF COLUMBIA
My Commission Expires
August 14, 2010

**EXHIBIT B**

# EXHIBIT E

# Incident Based Event Report

## PART I - CLASSIFICATION OF EVENT

**1 TYPE OF REPORT**
- ○ Offense
- ● Incident

**FILL IN THE OVALS COMPLETELY**
- Right Mark ●
- Wrong Marks ◐ ⊗ ⊘

**2 DATE AND TIME OF EVENT**

| | Start Date Month | Day | Year | Start Time Hour | Minute | End Date Month | Day | Year | End Time Hour | Minute |
|---|---|---|---|---|---|---|---|---|---|---|
| Value | Feb | 20 | 06 | 16:45 | | Jan | 20 | 06 | 1700 | |

**3 DATE OF REPORT**

| Month | Day | Year |
|---|---|---|
| Feb | 20 | 06 |

**4 TIME OF REPORT**

| Hour | Minute |
|---|---|
| 18:44 | |

**5 DISTRICT** 1
**6 SECTOR** 0
**7 BEAT** 101
**8 COMPLAINT NUMBER** 009094

**9 EVENT LOCATION ADDRESS**
301 C ST NW
WASH DC

**10** Report received location:
- Rear of
- In front of
- Along side of
- Inside of
- NW Corner
- ● NE Corner
- SW Corner
- SE Corner

**REPORT RECEIVED BY**
- TRU
- ● On-scene
- Radio run

**11 IS RADIO RUN LOCATION AND EVENT LOCATION THE SAME?**
- ○ Yes  ● No

**12 PROPERTY TYPE**
- Public
- ● Private

**13 EVENT NO. 1** MISC. REPORT
**14 EVENT NO. 2** 0053
**15 EVENT NO. 3**

**16 FORCED ENTRY**
- ○ Yes

**17 POINT OF ENTRY** N/A

**18 a. Method Used** N/A  **b. Tools Used** N/A

**19 WEATHER CONDITIONS**
- Clear
- Cloudy
- Rain
- Snow
- Other
- ● Not applicable
- Unknown

**20 SUSPECTED HATE CRIME?**
- ● None
- Ethnic
- Sexual Orientation
- Racial
- Religious
- Other

**21 SECURITY SYSTEM (Mark all that apply)**
- Alarm/Audio
- Alarm/Silent
- Camera
- Dog
- Dead bolt
- Unlocked
- Exterior lights
- Interior lights
- Fence
- Other
- Neighborhood watch
- ● Not applicable
- Unknown

**22 LOCATION TYPE (Mark only one)**
- Air/Bus/Train terminal
- Alley
- Bank/Savings & loan
- Bus stop
- Church/Synagogue/Temple
- College/University
- Commercial office building
- Construction site
- Convenience store
- Department/Discount store
- D.C. government building
- Doctor's office/Hospital
- Drug store
- Federal/Government bldg.
- Field/Woods
- Grocery/Supermarket
- Hotel/Motel/Etc.
- Jail/Prison
- Lake/Waterway
- Liquor store
- Park area
- Parking lot/Parking garage
- Public housing project
- Public/Private school
- Rental storage facility
- Residence/Home
- Restaurant
- Service station
- Sidewalk
- Specialty store
- Street/Highway/Road
- Tavern/Night club
- Other
- Not applicable
- Unknown

**23 DESIGNATED AREAS (Mark all that apply)**
- Victim's vehicle
- Suspect's vehicle
- Taxi-cab
- Bus
- Train/Metro/Amtrak/Etc.
- Hallway
- Elevator
- Stairwell
- Basement/Laundry room
- Apartment/Condo unit
- Single family dwelling
- Hotel/Motel room
- College/University dorm
- Classroom
- Office room
- Vacant building/room
- ● Customer area
- Storage area
- In public housing
- W/in 1 block of public housing
- W/in 1,000 ft. of school
- Other
- Not applicable
- Unknown

## PART II - VICTIM INFORMATION

**24 NAME OF COMPLAINANT/VICTIM/MISSING PERSON NO. 1**
DJATE, GERARD AKESSE

**25 RELATED TO EVENT NO(S).** 2 3 4 5 6 7 8 9 10

**26 VICTIM TYPE**
- ● Individual
- Business
- Financial inst.
- Government
- Religious org.
- Society/Public
- Police officer
- Other

**27 DATE OF BIRTH**

| Month | Day | Year |
|---|---|---|
| Feb | 21 | 66 |

**28 AGE** Unknown / NA

**29 SEX**
- ● Male
- Female
- Unknown

**30 HOME PHONE** ( ) UNKNOWN

**31 BUSINESS PHONE** (202) 678-5941

**AGE RANGE**
- 0-1 yr.
- 2-12 yrs.
- 13-17 yrs.
- ● 18-65 yrs.
- Over 65

**32 RACE/ETHNICITY (Mark all that apply)**
- American Indian/Alaskan Native
- Asian/Pacific Islander
- ● Black
- Chinese
- Latino/Hispanic
- Jamaican
- Japanese
- Korean
- Vietnamese
- White
- Other
- Unknown/Refused

**33 HOME ADDRESS**  ○ DC Resident  ● Non-DC Resident  ○ Unknown
29 N. 28th ST # 23
LAS VEGAS, NV 89101

**34 BUSINESS ADDRESS/SCHOOL**
2330 GOOD HOPE RD SE
STE #122 WASH DC.

**35 OCCUPATION** ATTORNEY

**36 IS EVENT RELATED TO OCCUPATION?**
- Yes  ● No

**37 ADDITIONAL MEANS TO CONTACT COMPLAINANT/VICTIM NO. 1** N/A

---

**38 NAME OF COMPLAINANT/VICTIM/MISSING PERSON NO. 1**
HAWK ONE SPECIAL POLICE

**39 RELATED TO EVENT NO(S).** 2 3 4 5 6 7 8 9 10

**40 VICTIM TYPE**
- Individual
- ● Business
- Financial inst.
- Government
- Religious org.
- Society/Public
- Police officer
- Other

**41 DATE OF BIRTH**
Unknown / NA

**42 AGE RANGE**
- 0-1 yr.
- 2-12 yrs.
- 13-17 yrs.
- 18-65 yrs.
- Over 65

**43 SEX**
- Male
- Female
- Unknown
N/A

**44 HOME PHONE** ( ) N/A

**45 BUSINESS PHONE** (202) 783-4060

**46 RACE/ETHNICITY (Mark all that apply)** N/A
- American Indian/Alaskan Native
- Asian/Pacific Islander
- Black
- Chinese
- Latino/Hispanic
- Jamaican
- Japanese
- Korean
- Vietnamese
- White
- Other
- Unknown/Refused

**47 HOME ADDRESS**  DC Resident  Non-DC Resident  Unknown
N/A

**48 BUSINESS ADDRESS/SCHOOL**
1331 H ST NW
WASH D.C.

**49 OCCUPATION** SECURITY

**50 IS EVENT RELATED TO OCCUPATION?**
- Yes  No

**51 ADDITIONAL MEANS TO CONTACT COMPLAINANT/VICTIM NO. 1** N/A

**52 STATUS (Mark one)**
- Open
- Unfounded
- Closed
- Suspended
- Closed by arrest, attach PD-252

**53 REVIEWER** K. Au[...]

**54 DISTRIBUTION**

| 55 | IS VICTIM #1 THE REPORTING PERSON? IF NO, ENTER THE NAME, ADDRESS AND PHONE NUMBER OF THE REPORTING PERSON. | Name: SLATE, DONTE A,   Phone-Area Code (301)735-1149 |
|----|----|----|
| | ○ Yes  ● No | Address: 3436 BRINKLEY Rd Temp Hill, MD 20748 |

| 56 | DID THE REPORTED EVENT OCCUR AS A RESULT OF AN INTRA-FAMILY MATTER? ○ Yes  ● No | 56A | WAS PD FORM 378A ISSUED? ○ Yes  ● No | 57 | IS CPO/TPO OUTSTANDING?  IF YES, ENTER CPO/TPO #: ○ Yes  ● No  ○ Unknown |
|----|----|----|----|----|----|

**58  INJURIES**  Use the following codes to describe injuries. (Mark all that apply)

N = None Visible
M = Apparent Minor Injury
B = Apparent Broken Bones

O = Other Major Injury
I = Possible Internal Injury
G = Gunshot

L = Severe Laceration
T = Loss of Teeth
U = Unconscious

| INJURED | NUMBER | INJURY CODE | DESCRIBE INJURY, | WHERE TAKEN | BY WHOM | DCFD AMB. | DCFD AMB. # | STATUS |
|----|----|----|----|----|----|----|----|----|
| ● Victim | ● ② ③ ④ ⑤ | N ● B O I | CUT TO THE HAND/WRIST | N/A | N/A | ● Yes ○ No | 19 | ● Admitted ○ Released |
| ○ Suspect | ① ② ③ ④ ⑤ | G L T U | | | | ○ Yes ○ No | | ○ Admitted ○ Released |
| ○ Victim | ① ② ③ ④ ⑤ | N M B O I | | | | ○ Yes ○ No | | ○ Admitted ○ Released |
| ○ Suspect | ① ② ③ ④ ⑤ | G L T U | | | | ○ Yes ○ No | | ○ Admitted ○ Released |
| ○ Victim | ① ② ③ ④ ⑤ | N M B O I | | | | ○ Yes ○ No | | ○ Admitted ○ Released |
| ○ Suspect | ① ② ③ ④ ⑤ | G L T U | | | | ○ Yes ○ No | | ○ Admitted ○ Released |
| ○ Victim | ① ② ③ ④ ⑤ | N M B O I | | | | ○ Yes ○ No | | ○ Admitted ○ Released |
| ○ Suspect | ① ② ③ ④ ⑤ | G L T U | | | | ○ Yes ○ No | | ○ Admitted ○ Released |

**PART III - PROPERTY**

| 59 | Codes | S = Stolen  E = Evidence  R = Recovered  F = Found | I = Impounded  V = Vehicle from which theft occurred  D = Alleged drug type | L = Lost  P = Suspected proceeds of crime  O = Other | | **a.** Property Book & Page No. | **b.** Location of Property Book |
|----|----|----|----|----|----|----|----|

| Code | Description of Item(s) | Serial Number/ Operation ID No. | Model No. | Color | Size | Quantity | Comp. Value | Age | MPDC Value |
|------|------------------------|---------------------------------|-----------|-------|------|----------|-------------|-----|------------|
| | N / A | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | TOTAL VALUE ▶ |

**60  VEHICLE INFORMATION**   Vehicle operated/used by:  ○ Victim  ○ Suspect   Victim's vehicle taken by suspect

| Code | Year | Make | Model | Color | Body | Tag No./State/Year | VIN |
|------|------|------|-------|-------|------|--------------------|-----|
| | | | | | | | |

**PART IV - SUSPECT/MISSING PERSON INFORMATION (Use narrative if additional space is needed.)**

| 61 | #1 ○ Suspect ○ Missing | **a.** Race ○ Asian ○ White ○ Black ○ Latino/Hispanic ○ Unknown ○ Other | **b.** Sex ○ Male ○ Female ○ Unknown | **c.** Exact Age or Range | **d.** Height | **e.** Weight | **f.** Eyes | **g.** Hair |
|----|----|----|----|----|----|----|----|----|
| **h.** Complexion | **i.** Scars | **j.** Mustache | **k.** Facial Hair | **l.** Hat | **m.** Coat/Jacket | **n.** Pants | **o.** Blouse/Shirt | **p.** Perpetrator Suspected of Using ○ Alcohol ○ Drugs ○ Computer ○ N/A |

**q.** Weapons Used in Offense (Mark all that apply)

| Firearm ○ Handgun ○ Shotgun ○ Other ○ Revolver ○ Semi-automatic firearm ○ Rifle ○ Automatic | Other ○ Cutting instrument ○ Hands/Feet/Teeth ○ Other (specify) ○ Blunt object ○ None ○ Motor vehicle ○ Unknown | Color | Make | Model | Caliber |
|----|----|----|----|----|----|

| 62 | #2 ○ Suspect ○ Missing | **a.** Race ○ Asian ○ White ○ Black ○ Latino/Hispanic ○ Unknown ○ Other | **b.** Sex ○ Male ○ Female ○ Unknown | **c.** Exact Age or Range | **d.** Height | **e.** Weight | **f.** Eyes | **g.** Hair |
|----|----|----|----|----|----|----|----|----|
| **h.** Complexion | **i.** Scars | **j.** Mustache | **k.** Facial Hair | **l.** Hat | **m.** Coat/Jacket | **n.** Pants | **o.** Blouse/Shirt | **p.** Perpetrator Suspected of Using ○ Alcohol ○ Drugs ○ Computer ○ N/A |

**q.** Weapons Used in Offense (Mark all that apply)

| Firearm ○ Handgun ○ Shotgun ○ Other ○ Revolver ○ Semi-automatic firearm ○ Rifle ○ Automatic | Other ○ Cutting instrument ○ Hands/Feet/Teeth ○ Other (specify) ○ Blunt object ○ None ○ Motor vehicle ○ Unknown | Color | Make | Model | Caliber |
|----|----|----|----|----|----|

| 63 | #3 ○ Suspect ○ Missing | **a.** Race ○ Asian ○ White ○ Black ○ Latino/Hispanic ○ Unknown ○ Other | **b.** Sex ○ Male ○ Female ○ Unknown | **c.** Exact Age or Range | **d.** Height | **e.** Weight | **f.** Eyes | **g.** Hair |
|----|----|----|----|----|----|----|----|----|
| **h.** Complexion | **i.** Scars | **j.** Mustache | **k.** Facial Hair | **l.** Hat | **m.** Coat/Jacket | **n.** Pants | **o.** Blouse/Shirt | **p.** Perpetrator Suspected of Using ○ Alcohol ○ Drugs ○ Computer ○ N/A |

**q.** Weapons Used in Offense (Mark all that apply)

| Firearm ○ Handgun ○ Shotgun ○ Other ○ Revolver ○ Semi-automatic firearm ○ Rifle ○ Automatic | Other ○ Cutting instrument ○ Hands/Feet/Teeth ○ Other (specify) ○ Blunt object ○ None ○ Motor vehicle ○ Unknown | Color | Make | Model | Caliber |
|----|----|----|----|----|----|

*Value of vehicles to be entered by Information Processing section

CCN 009094

PAGE 2

**PART V - MISSING PERSONS**

| 64 PROBABLE CAUSE OF ABSENCE AND DESTINATION | 65 COMPLAINT NUMBER |
|---|---|

**65 COMPLAINT NUMBER:** 0 0 9 0 8 9

| 66 IF MISSING PERSON HAS RUN AWAY BEFORE, GIVE DATE AND WHERE LOCATED: | 67 CLASSIFICATION | 68 CLASSIFIED BY: |
|---|---|---|
| N/A | Critical / Non-critical | |

| 69 PHYSICAL/MENTAL CONDITION (i.e., diabetic) | 70 DESCRIBE ARTICLES OF JEWELRY WORN AND IDENTIFICATION CARRIED | 71 NAME OF PARENT/GUARDIAN |
|---|---|---|

| 72 ADDRESS OF PARENT/GUARDIAN | 73 IF JUVENILE, ENTER MOTHER'S MAIDEN NAME | 74 MISSING PERSON SECTION NOTIFIED (Name) |
|---|---|---|

**75 NARRATIVE** Describe event and action taken. If additional narrative space is needed, use PD Form 251-A.

Item Number Continued

C1 STATES THAT HE WENT TO THE DMV TO RENEW HIS REGISTRATION WHEN HE FOUND OUT HE HAD AN UNPAID PARKING TICKET. HE INQUIRED ABOUT THE TICKET TO THE PROPER PERSONEL BUT WAS UNABLE TO RESOLVE HIS ISSUE. C1 STATES THAT AFTER SEVERAL ATTEMPTS PERSONEL BECAME UPSET AND ASKED HIM TO LEAVE. C1 FURTHER REPORTS THAT SPO'S FORCED HIM TO LEAVE INJURING HIM.

R1 REPORTS THAT HE ASKED C1 TO LEAVE AFTER PERSONEL ADVISED HIM THAT C1 WAS BEING DISORDERLY. R1 ADVISED THAT HE ESCORTED C1 OUT OF THE BUILDING BUT C1 REENTERED THROUGH ANOTHER ENTRANCE. R1 STATES THAT C1 WAS UNCOOPERATIVE AND WAS ESCORTED OUT FOR A SECOND TIME.

AT THIS TIME IT IS UNDETERMINED HOW C1 OBTAINED THE LISTED INJURIES.

| 76 EVIDENCE TECHNICIAN/CSES # | 77 NAME OF INVESTIGATOR NOTIFIED | 78 TELETYPE NOTIFIED (Name) | NOTIFICATION ALSO REQUIRED WHENEVER MISSING PERSON LOCATED | 79 TELETYPE # |
|---|---|---|---|---|

| 80 REPORTING OFFICER'S SIGNATURE | ELEMENT | 81 OTHER POLICE AGENCY (Indicate if report prepared by officer other than MPD) | 82 SECOND OFFICER'S NAME | ELEMENT | 83 SIGNATURE OF SUPERVISOR | ELEMENT |
|---|---|---|---|---|---|---|
| | 1D | USCP / USSS / METRO TRANSIT / OTHER | HINTON | 1D | | 1-D |

BADGE NUMBER

| **84** NAME OF COMPLAINANT/VICTIM/MISSING PERSON NO. 1 | **85** RELATED TO EVENT NO(S). |
|---|---|
| | 1  2  3  4  5 |
| | 6  7  8  9  10 |

**86** VICTIM TYPE

Individual    Financial inst.    Religious org.    Police officer
Business    Government    Society/Public    Other

| **87** DATE OF BIRTH | **88** AGE RANGE | **89** SEX | **90** HOME PHONE |
|---|---|---|---|
| Unknown   NA | 0-1 yr. | Male | ( ) |

| Month | Day | Year | 2-12 yrs. | Female | **91** BUSINESS PHONE |
|---|---|---|---|---|---|
| Jan | | | 13-17 yrs. | Un- | |
| Feb | | | 18-65 yrs. | known | ( ) |
| Mar | 0 | 0  0  0 | Over 65 | | |
| Apr | 1 | 1  1  1 | | | |
| May | 2 | 2  2  2 | **92** RACE/ETHNICITY (Mark all that apply) | | |
| Jun | 3 | 3  3  3 | American Indian/Alaskan Native   Japanese | | |
| Jul | 4 | 4  4 | Asian/Pacific Islander   Korean | | |
| Aug | 5 | 5  5 | Black   Vietnamese | | |
| Sep | 6 | 6  6 | Chinese   White | | |
| Oct | 7 | 7  7 | Latino/Hispanic   Other | | |
| Nov | 8 | 8  8 | Jamaican   Unknown/Refused | | |
| Dec | 9 | 9  9 | | | |

**93** HOME ADDRESS    DC Resident    Non-DC Resident    Unknown

**94** BUSINESS ADDRESS/SCHOOL

**95** OCCUPATION    **96** IS EVENT RELATED TO OCCUPATION?
   Yes   No   Unknown

**97** ADDITIONAL MEANS TO CONTACT COMPLAINANT/VICTIM NO. 1

---

| **98** NAME OF COMPLAINANT/VICTIM/MISSING PERSON NO. 1 | **99** RELATED TO EVENT NO(S). |
|---|---|
| | 1  2  3  4  5 |
| | 6  7  8  9  10 |

**100** VICTIM TYPE

Individual    Financial inst.    Religious org.    Police officer
Business    Government    Society/Public    Other

| **101** DATE OF BIRTH | **102** AGE RANGE | **103** SEX | **104** HOME PHONE |
|---|---|---|---|
| Unknown   NA | 0-1 yr. | Male | ( ) |

| Month | Day | Year | 2-12 yrs. | Female | **105** BUSINESS PHONE |
|---|---|---|---|---|---|
| Jan | | | 13-17 yrs. | Un- | |
| Feb | | | 18-65 yrs. | known | ( ) |
| Mar | 0 | 0  0  0 | Over 65 | | |
| Apr | 1 | 1  1  1 | | | |
| May | 2 | 2  2  2 | **106** RACE/ETHNICITY (Mark all that apply) | | |
| Jun | 3 | 3  3  3 | American Indian/Alaskan Native   Japanese | | |
| Jul | 4 | 4  4 | Asian/Pacific Islander   Korean | | |
| Aug | 5 | 5  5 | Black   Vietnamese | | |
| Sep | 6 | 6  6 | Chinese   White | | |
| Oct | 7 | 7  7 | Latino/Hispanic   Other | | |
| Nov | 8 | 8  8 | Jamaican   Unknown/Refused | | |
| Dec | 9 | 9  9 | | | |

**107** HOME ADDRESS    DC Resident    Non-DC Resident    Unknown

**108** BUSINESS ADDRESS/SCHOOL

**109** OCCUPATION    **110** IS EVENT RELATED TO OCCUPATION?
   Yes   No   Unknown

**111** ADDITIONAL MEANS TO CONTACT COMPLAINANT/VICTIM NO. 1

---

**112**

| #1 Suspect Missing | a. Race | | | b. Sex | | c. Exact Age or Range | d. Height | e. Weight | f. Eyes | g. Hair |
|---|---|---|---|---|---|---|---|---|---|---|
| | Asian   White | | Unknown | Male | Unknown | | | | | |
| | Black   Latino/Hispanic | | Other | Female | | | | | | |

| h. Complexion | i. Scars | j. Mustache | k. Facial hair | l. Hat | m. Coat/Jacket | n. Pants | o. Blouse/Shirt | p. Perpetrator Suspected of Using |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Alcohol   Drugs |
| | | | | | | | | Computer   N/A |

q. Weapons Used in Offense (Mark all that apply)

| Firearm | | | Cutting instrument | Other Hands/Feet/Teeth   Other (specify) | Color | Make | Model | Caliber |
|---|---|---|---|---|---|---|---|---|
| Handgun   Shotgun | Other | | Blunt object | None | | | | |
| Revolver   Semi-automatic | firearm | | Motor vehicle | Unknown | | | | |
| Rifle   Automatic | | | | | | | | |

**113**

| #2 Suspect Missing | a. Race | | | b. Sex | | c. Exact Age or Range | d. Height | e. Weight | f. Eyes | g. Hair |
|---|---|---|---|---|---|---|---|---|---|---|
| | Asian   White | | Unknown | Male | Unknown | | | | | |
| | Black   Latino/Hispanic | | Other | Female | | | | | | |

| h. Complexion | i. Scars | j. Mustache | k. Facial hair | l. Hat | m. Coat/Jacket | n. Pants | o. Blouse/Shirt | p. Perpetrator Suspected of Using |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Alcohol   Drugs |
| | | | | | | | | Computer   N/A |

q. Weapons Used in Offense (Mark all that apply)

| Firearm | | | Cutting instrument | Other Hands/Feet/Teeth   Other (specify) | Color | Make | Model | Caliber |
|---|---|---|---|---|---|---|---|---|
| Handgun   Shotgun | Other | | Blunt object | None | | | | |
| Revolver   Semi-automatic | firearm | | Motor vehicle | Unknown | | | | |
| Rifle   Automatic | | | | | | | | |

**114**

| #3 Suspect Missing | a. Race | | | b. Sex | | c. Exact Age or Range | d. Height | e. Weight | f. Eyes | g. Hair |
|---|---|---|---|---|---|---|---|---|---|---|
| | Asian   White | | Unknown | Male | Unknown | | | | | |
| | Black   Latino/Hispanic | | Other | Female | | | | | | |

| h. Complexion | i. Scars | j. Mustache | k. Facial hair | l. Hat | m. Coat/Jacket | n. Pants | o. Blouse/Shirt | p. Perpetrator Suspected of Using |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Alcohol   Drugs |
| | | | | | | | | Computer   N/A |

q. Weapons Used in Offense (Mark all that apply)

| Firearm | | | Cutting instrument | Other Hands/Feet/Teeth   Other (specify) | Color | Make | Model | Caliber |
|---|---|---|---|---|---|---|---|---|
| Handgun   Shotgun | Other | | Blunt object | None | | | | |
| Revolver   Semi-automatic | firearm | | Motor vehicle | Unknown | | | | |
| Rifle   Automatic | | | | | | | | |

P.D. 252 Rev. 10/86    Metropolitan Police Department — **SUPPLEMENT REPORT** — Washington, D. C.

| | 1. DISTRICT | 2. BEAT | 3. RA | 4. ORIGINAL CLASSIFICATION | 5. COMPLAINT NUMBER |
|---|---|---|---|---|---|
| ☐ Classification Change  ☒ Additional Information | 1D | 101 | | MISC. REPORT | 009094 |

| 6. DATE OF THIS REPORT | 7. REPORTING ELEM. | 8. CLASSIFICATION OF REPORT CHANGED TO: |
|---|---|---|
| 1/20/06 | 1D | N/A |

| 9. DATE AND TIME OF EVENT | 10. DATE AND TIME OF ORIG. RPT. | 11. EVENT LOCATION | 12. PROPERTY TYPE |
|---|---|---|---|
| 1/20/06  1645 | 1/20/06  1844 | 301 C ST NW | ☐ Public  ☒ Private |

| 13. RADIO RUN RECEIVED | 14. DESCRIBE LOCATION | 15. WHERE ENTERED | 16. TOOLS/WEAPONS | 17. METHODS |
|---|---|---|---|---|
| ☒ YES  ☐ NO   TIME RECEIVED | DMV | N/A | N/A | N/A |

| 18. | COMPLAINANT/MISSING PERSON/FIRM | SEX | RACE | DATE OF BIRTH | | COMPLAINANT/MISSING PERSON/FIRM | SEX | RACE | DATE OF BIRTH |
|---|---|---|---|---|---|---|---|---|---|
| A | NJATE, GERARD A. | M | B | 2/01/66 | B | HAWK ONE SPEC PO. | | | N/A |

| 19. Suspect/Missing Person | | RACE | SEX | AGE | HEIGHT | WEIGHT | EYES | HAIR | COMPLEXION | SCARS | HAT | COAT | JACKET | PANTS | SHIRT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ☐ SUSPECT  ☐ MISSING PERSON | | | | | N/A | | | | | | | | | | |
| ☐ SUSPECT  ☐ MISSING PERSON | | | | | | | | | | | | | | | |

**20. SOLVABILITY FACTORS** — Complete each item below. If additional space is needed, use the narrative section. If necessary, use PD Form 251-A. Refer to the specific item numbers when continuing information in the narrative section or on PD Form 251-A.

| | |
|---|---|
| IS THERE A WITNESS?  ☒ YES ☐ NO | *If yes, enter name(s), address(es), phone number(s), hours of availability and brief account.*  UNINVOLVED WITNESS THAT WAS NOT INTERVIEW DUE TO UNANSWERED PHONE CALL (ATT. BY C2). MONIQUE W. (202) 269-5739 |
| IS A SUSPECT NAMED?  ☐ YES ☐ NO | *Enter the name and include any nickname used.*  N/A |
| IS THE STOLEN PROPERTY TRACEABLE?  ☐ YES ☐ NO | *Include reason why or why not.*  N/A |
| IS PHYSICAL EVIDENCE PRESENT?  ☐ YES ☐ NO | *Describe it.*  N/A |
| IS THE PERPETRATOR KNOWN TO THE VICTIM?  ☐ YES ☐ NO | *If yes, describe the relationship.*  N/A |
| WAS A REFERRAL FORM GIVEN TO COMPLAINANT?  ☒ YES ☐ NO | *Give any address, place of employment, or hangout known for the perpetrator(s).* |
| DURING WHAT HOURS IS COMPLAINANT AVAILABLE FOR INTERVIEW | *List the name, address, phone number and any information provided when the area was canvassed.* |
| IS AN MO OR PATTERN INDICATED?  ☐ YES ☐ NO | *Describe MO or Pattern* |

**21. ADDITIONAL STOLEN PROPERTY**

| CODE | ITEM | SERIAL NO./OPERATION ID NO. | MODEL NO. | COMP. VALUE | AGE | MPDC VALUE | Property Book |
|---|---|---|---|---|---|---|---|
| | | N/A | | | | | BOOK/PAGE NO. / ADDITIONAL VALUE |

| YEAR | MAKE | MODEL | COLOR | BODY | TAG/STATE/YEAR | VEHICLE IDENTIFICATION NO. | * * | ORIGINAL VALUE / TOTAL PROP. VALUE |
|---|---|---|---|---|---|---|---|---|

**22. NARRATIVE:** Record your activity and all developments in the case subsequent to your last report. List the names, addresses, sex, race, age, and arrest numbers of all arrested persons. Explain any change in classification. List the names, addresses, and telephone numbers of all witnesses and suspects.

SPO TIMOTHY DELVENS 1804 HOLLYBERRY RD FT WASH MD 20744
DOB: 3-28-71  PH (301) 203-9329, ASSISTED IN ESCORTING
C1 FROM 301 C ST NW "DMV".

OFFICIALS ON SCENE: SGT RODGERS, SGT DUKES, DET. CEPHAS 1D28.
NOTIFICATIONS: SGT BRAXTON (SOCC) ON SCENE: LT R HUDSON HAWK ONE

| 23. STATUS | 24. TELETYPE NO. | 25. SOLVABILITY RATING | 26. SOLVABILITY CLASSIFICA. |
|---|---|---|---|
| ☐ OPEN  ☐ PRIOR CLOSED  ☐ CLOSED  ☐ UNFOUNDED (EXPLAIN IN NO. 22)  ☐ SUSPENDED (EXPLAIN IN NO. 22) | | | |

| 27. INVESTIGATIVE OFFICER'S RECOMMENDATION | 28. SUPERVISOR'S RECOMMENDATION |
|---|---|
| ☐ SUSPEND   ☐ INVESTIGATE FURTHER | ☐ SUSPEND   ☒ INVESTIGATE FURTHER |

| 29. REPORTING MEMBER'S SIGNATURE | BADGE/ELEM  1478/1D | 30. INVESTIGATOR'S SIGNATURE | BADGE/ELEM | 31. SUPERVISOR'S SIGNATURE  1-0572 |
|---|---|---|---|---|
| | | | | |

| 32. INVESTIGATIVE REVIEW OFFICER | 33. SUPERVISOR | BADGE/ELEM | 34. REVIEWER | 35. DISTRIBUTION |
|---|---|---|---|---|

* * Value of vehicles will be entered by the Information Processing Section, Data Processing Division.

87P7575

PAGE 1 OF 1 PAGES

CONTINUATION REPORT

1. COMPLAINT NUMBER

2. NARRATIVE CONTINUED

| 3. REPORTING OFFICER | BADGE/ORG ELM | 4. INVESTIGATOR | BADGE/ORG ELM | 5. SUPERVISOR | BADGE/ORG ELM |
| --- | --- | --- | --- | --- | --- |