UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **GERARD DJATE**    Plaintiff<br><br>v.<br><br>**THE DISTRICT OF COLUMBIA,** *et al.*<br><br>Defendants. | )<br>)<br>)<br>) 1:07CV00100 (EGS)<br>)<br>) Judge E.G. Sullivan<br>)<br>)<br>)<br>) |

### PLAINTIFF'S REBUTTAL TO DEFENDANT DISTRICT OF COLUMBIA'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AND/OR MOTION FOR SUMMARY JUDGMENT

Plaintiff Gerard Djate ("Plaintiff"), *Pro Se,* hereby respectfully files this Rebuttal to Defendant District of Columbia's Reply to Plaintiff's Opposition to Motion to Dismiss and/or Motion for Summary Judgment ("Opposition"). In support of his Rebuttal, Plaintiff refers this Court to the attached Memorandum of Points and Authorities.

Dated: August 23, 2007

Respectfully submitted,

_____
Gerard Djate, *Pro Se*
2330 Good Hope Rd S.E., #1222
Washington, DC 20020
(202) 460-0097/ 678-5941

**RECEIVED**
AUG 2 4 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **GERARD DJATE** | ) |
| | ) |
| Plaintiff | ) |
| | ) 1:07CV00100 (EGS) |
| | ) |
| v. | ) Judge E.G. Sullivan |
| | ) |
| THE DISTRICT OF COLUMBIA, *et al.* | ) |
| | ) |
| Defendants. | ) |

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S REBUTTAL TO DEFENDANT DISTRICT OF COLUMBIA'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AND/OR MOTION FOR SUMMARY JUDGMENT

COMES NOW, the Plaintiff Gerard ("the Plaintiff"), *Pro Se* and in support of his Rebuttal avers as follows:

### I.   Preliminary Statement

1.   On June or about June 15, 2007, Defendant Donte A. Slade, represented by counsel, admitted in his Answer to Plaintiff's complaint that "at all relevant times Tim Delyons, Donte Slade, and Jane and John Does One through Six were acting within the scope of their employment with Defendants District of Columbia and Hawk One Security, Inc., and asserting Defendant District of Columbia' authority as duly authorized agents of Defendants District of Columbia and Hawk One Security, Inc." *See* Court Record; Complaint, ¶ 81; and Defendant Donte A. Slade's Answer to Complaint, ¶ 13.

### ARGUMENT

### A.   By Defendant Slade Admitting that He Acted Asserting Defendant District of Columbia Government's Authority and As Its Authorized Agent, Plaintiff Has Established a Fourth Amendment Claim Against Defendant District of Columbia

2

First, in order to avoid a repeat of applicable argument made in his Opposition, Plaintiff respectfully redirects this Court's attention to his Opposition to Defendant District of Columbia's Motion at bar, as this Rebuttal is mostly intended as a Supplement.

Second, the record before this Court shows that Defendant District of Columbia's instant Motion is not ripe for a favorable ruling in its favor as the parties have not yet commenced formal discovery pursuant to Fed. R. Civ. P. 16(b) and for the supplemental reasons advanced in Plaintiff's Opposition. One needs no argument that Plaintiff needs the benefits of a complete discovery in establishing to the satisfaction of a factfinder that the acts of all of the defendants were pursuant to the policy, custom, and practice of Defendant District of Columbia.

Third, in his Complaint, Plaintiff has specifically alleged that Defendant Donte Slade, and Tim Delyons acted under the directions or the orders from Defendant District of Columbia's employees while within the scope of their employments. *See* Complaint, ¶¶ 30, 19. It is undisputed in this case that Defendant District of Columbia's DMV employees were acting within the scope of their employment at all relevant times, thus Defendant District of Columbia may be sued under common-law doctrine of respondeat superior for the intentional torts of those employees. *See Wade v. District of Columbia*, 310 A.2d 857 (D.C. 1973); *District of Columbia v. Chinn*, 839 A.2d 701 (D.C. 2003); *Tatum v. Morton*, 402 F.Supp. 719 (1974), supplemented 386 F.Supp. 1308, remanded 562 F.2d 1279, 183 U.S.App.D.C. 331 (1974); D.C.C.E § 1-922.

Granted, one that hires an independent contractor generally is not responsible for the independent contractor's acts or failures to act. However, that general rule has no blanket application. Indeed, there are several exceptions to that rule. One such exception is where

"an employer who entrusts work to an independent contractor but who retains the control of any part of the work may be liable for physical harm caused by the employer's negligence in exercising his control". *See Fry v. Diamond Constr., Inc.*, 659 A.2d 241, 248 (D.C. 1995). In the instant case, first, through Defendant Slade's own admission, the two offending special police officers Donte Slade and Tim Delyons acted under the control of Defendant District of Columbia. Indeed, in this instance, Defendant Slade and his co-defendant Tim Delyons gladly left their stationed position to go over and act as they did because they were so directed by Defendant District of Columbia's employees or at least appear to have believed and understood that they were so directed and/or were acting under Defendant District of Columbia governmental authority. It is well settled that "a person is responsible for any tortuous results which he intends to accomplish and in which his conduct is a causative factor". *Paulson v. Madison Newspapers,* 274 Wis. 355, 80 N.W.2d 421 (1957). This needs no exposition. One who induces another or otherwise causes another to commit battery is of course as responsible as if he had caused the battery by other means. So also is one liable for the consequences of another's physical activities if, with knowledge of the circumstances, he directs the specific acts to be performed. A person may also be liable for his negligent failure to prevent a contractor from acting dangerously. *Basciono v. George A. Fuller, Co.*, 4 Misc.2d 322, 150 N.Y.S.2d 312 (1956). It is further well settled that towns and cities owning and operating public buildings have a duty of care to have these reasonably safe. Additionally, under the law relating to its proprietary obligation as the owner and operator of property used for business purposes to one invited there as a customer, Defendant District of Columbia is liable for injuries to a customer in plaintiff Djate's position at such a place. In these

situations, Defendant District of Columbia, the entity under the non-deleguable duty, is liable for the acts and omissions of the one whom it employs to do the security work as it would be for its own servants. D.C. Code 1915, §§ 1-102, 1-103, 1-218, 10-137; *District of Columbia v. Green*, 223 F.2d 312 (C.A.D.C. 1955).

That being the case, another exception to the general rule is triggered here where "an employer may be liable for the physical harm caused by the independent contractor's acts or omissions that occurred under the employer's negligent orders". *See Fry, supra*, at 246-247 (following Restatement (Second) of Torts § 410 (1965)). Further evidence of Defendant District of Columbia's retention of control over its "independent contractor" Defendants Hawk One Security, Inc., Defendants Special Police officers Donte Slade and Tim Delyons can even be found in Defendant District of Columbia's Exhibit A attached to its Motion which is a *only a small part* – not the complete contract between the defendants. It is indeed revealing that Defendant District of Columbia is still unwilling to produce the complete contract.

Additionally, in support of its Opposition to the instant Motion, Plaintiff submitted local newspapers articles purporting to show Defendant District of Columbia's negligent hiring and retention of Hawk One Security, Inc in spite of the grave concerns expressed by the general public. *See* also Exhibit 1 attached from the Washington Post of June 7, 2005. In this jurisdiction, negligent hiring and/or retention is a well recognized exception to the general rule of non-liability in principal-independent contractor relations. *See Levy v. Currier*, 587 A.2d 205, 211-212 (D.C. 1991) (citing Restatement (Second) of Torts §§ 411 & cmt. b; 413 & cmt. b, c, and d (1965)); *Wilson v. Good Humor Corp.*, 757 F.2d 1293, 1309-1310, 244 U.S.App. D.C. 298, 309-310, 314-315 (1985); *Traudt v. Potomac*

5

*Elec. Power Co.*, 692 A.2d 1326, 1332 (D.C. 1997)

Another exception to the general rule applicable here is where an employer's liability arises for injuries caused by the independent contractor's negligence in performing inherently dangerous work. One needs no argument that the occupation of armed security is an inherently dangerous work. *See* Restatement (Second) of Agency §245 & cmt. I (1965) (stating that "although a servant is employed in a matter not involving the use of force, he may nevertheless cause the master to be liable for its use if he is in a position which requires contacts with third persons under circumstances likely to lead to disputes"). *See* also Restatement (Second) of Agency §§212, 213, 214, 215 (1965) all of which are applicable to this case as exceptions to the general rule.

### B. Plaintiff Has Satisfied D.C. Code § 12-309 Notice Requirements

Plaintiff respectfully refers this Court to the argument made and evidence adduced in support thereof in his filed Opposition.

### C. Plaintiff Has Articulated Sufficient Facts Supporting the Applicability of an Exception to the Public Duty Doctrine

Plaintiff respectfully refers this Court to the argument made and evidence adduced in support thereof in his filed Opposition.

### Conclusion

WHEREFORE, all premises considered, Plaintiff respectfully prays that this Honorable Court deny Defendant District of Columbia's Motion to Dismiss and/or Motion for Summary Judgment.

Dated:  August 23, 2007                                    Respectfully submitted,

Gerard Djate, *Pro Se*
2330 Good Hope Rd S.E., #1222
Washington, DC 20020
(202) 460-0097/ 678-5941

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 24th day of August 2007, a copy of the foregoing Plaintiff's Rebuttal to Defendant District of Columbia's Reply to Plaintiff's Opposition to Defendant District of Columbia's First Amended Motion to Dismiss and/or Motion for Summary Judgment was mailed, postage prepaid, to Defendant District of Columbia, through its attorney of record Rachel R. Hranitzky, Esquire to the following address: Rachel R. Hranitzky, Esq., Assistant Attorney General for the District of Columbia, 441 Fourth Street, N.W., Sixth Floor North, Washington, DC 20001 and to Leonard L. McCants, Esquire, counsel for Hawk One Security, Inc. and Donte A. Slade at 8701 Georgia Avenue, Suite 801, Silver Spring, MD 20910.

_____
Gerard Djate

# Exhibit 1

**washingtonpost.com**

# Firm's Finances Worry D.C. School Officials

Security Company Rated 'High Risk' in Report, but Council Members Express Confidence

By V. Dion Haynes
Washington Post Staff Writer
Tuesday, June 7, 2005; B01

D.C. Board of Education members said yesterday that they are concerned that city officials have awarded a two-year, $30.1 million school security contract to a company that is rated a high risk for bankruptcy and late payments.

They said their concerns about Hawk One Security Inc. are based on a 17-page report prepared by the business information firm Dun & Bradstreet as part of the city's vetting process for bidders on the contract.

On a scale of 1 to 5 that measures the risk that a company will experience "severe financial stress, such as a bankruptcy over the next 12 months," the Dun & Bradstreet report gave Hawk One a score of 5. Similarly, it got a 5 as its credit score, indicating a "high risk of severe payment delinquency over the next 12 months," the report said.

Several city officials, including D.C. Council member Kathy Patterson (D-Ward 3), who chairs the education committee, said that although they were initially alarmed by the report, they have received additional information from Hawk One that has convinced them that the company would be able to fulfill the contract.

The report said the high-risk ratings were based on factors such as bills more than 60 days past due and evidence of liens involving unpaid state and federal taxes.

Several school board members said they are worried about awarding the security contract to a company that could go out of business, citing the threat to student safety if the schools are left without guards.

"I'm concerned the company could do reckless things to stay above the margin," said board Vice President Carolyn N. Graham, who said she and her colleagues learned of the report last week. "We don't want to put children's safety in the hands of a company at risk of going under."

Patterson has invited board members to a meeting today to discuss their concerns.

City officials said they have not encountered any problems with Hawk One's fulfillment of a contract to provide security in D.C. government buildings.

The city paid the company $7.4 million last year, according to D.C. contracting records.

Hawk One President Tyrone Thompson did not return messages left at his office.



Advertisement

WACHOVIA

WACHOVIA
FREE
CHECKING
comes from
the only bank
rated #1 in
Customer Satisfaction
6 years in a row.

WACHOVIA

The contract with Hawk One stems from the council's decision last year, after a fatal shooting at Ballou Senior High School and complaints about the previous security contractor, to shift authority over school security from the school system to the D.C. police. School board members have been skeptical of that arrangement, saying it will be unwieldy and expensive to have police oversee security while the school system continues to pay for it.

A panel of city, police and school officials recommended Hawk One last month. ███████████████████████████████████, the contract is scheduled to take effect July 1.

However, board members said they are looking into whether they can take action to block its implementation.

Hawk One, a District-based minority-owned company, was founded in 1992, the Dun & Bradstreet report said. The report listed eight tax liens filed against the company in Maryland and the District from 1996 to 2003.

William E. Sharp, chief contracting officer for the police department, said he was satisfied with Hawk One's financial health after the company supplied additional records.

"The tax liens are older and in the process of being resolved," he said.

Patterson said she, too, was reassured when she learned about the additional information. She questioned why school board members did not raise their concerns earlier, noting that a member of the school system's legal team was on the panel that recommended Hawk One.

Alan F. Hauff, a small-business program specialist for the College of Business Administration at the University of Missouri at St. Louis, looked at the Dun & Bradstreet study at a reporter's request. Hauff said that small minority firms working for city governments often encounter credit problems. He said the fact that the company has managed to stay afloat for more than 10 years with 150 employees demonstrates that it is viable.

"Cities are notorious for paying 60 to 90 days late," Hauff said. "He's got a large payroll to foot. . . . If he had a problem meeting the payroll, the government would shut him down. They've not done that."

*Database editor Dan Keating and researcher Bobbye Pratt contributed to this report.*

© 2005 The Washington Post Company

**Ads by Google**

**BlackBerry® Curve™ 8300**
Portable. Stylish. Smart. Style Meets Substance. BlackBerry Curve.
www.BlackBerryCurve.com

# Metropolitan

## Security firm challenges loss of D.C. schools contract

By Jim McElhatton
THE WASHINGTON TIMES
June 10, 2005

A spokeswoman for Watkins yesterday said the company wants the Contract Appeals Board to overturn the Hawk One contract.

"They've awarded this contract to a company that is financially unstable at the very least," Watkins spokeswoman Donna Henry said. "It's a reflection to the degree they'll go to prevent fair and competitive bidding."

The school system's security came under scrutiny after a student was fatally shot inside Ballou Senior High School in February 2004. Since then, the D.C. Office of the Inspector General has uncovered failures in the school system's contracting office.

Watkins, which has handled school security since 2003, said in its legal filing that it should retain the contract because Hawk One owes more than $2 million in income taxes, according to a financial background check.

In an interview earlier this week, Hawk One President Tyrone Thompson estimated his company's debt to the Internal Revenue Service at "a little over a million dollars." He said that amount was down from more than $8 million. He told The Washington Times that the debt had been incurred under a previous management.

Mr. Thompson also said his company is financially stable after securing a line of credit of more than $20 million. He said the company will have paid off its debt in three months and is negotiating with the IRS.

He could not be reached for comment yesterday.

School system officials also have expressed concern about Hawk One's finances.

In a May 31 letter to City Administrator Robert C. Bobb, schools Superintendent Clifford B. Janey said he and school board members were alarmed that a background check showed the company at a "high risk of severe payment delinquency over the next 12 months."

Mr. Bobb sent a letter yesterday to Mr. Janey, saying city contracting officials performed financial background checks "in great detail" on Hawk One and its funding corporation.

"I take very seriously the safety of the children of the District of Columbia," Mr. Bobb wrote. "Given all information provided, the award to Hawk One is in the best interest of the District."

D.C. Council member Kathy Patterson, Ward 3 Democrat and chairman of the education committee, defended the Hawk One contract.

"This is one of the most thorough procurements done by the District," she said, adding that the Watkins protest was not a surprise.

Copyright ? 1999 - 2005 News World Communications, Inc.
http://www.washingtontimes.com/metro/20050609-105042-1586r.htm

## Metropolitan

### Contract awarded despite tax liens

By Jim McElhatton
THE WASHINGTON TIMES
November 29, 2005

The D.C. government has awarded a no-bid contract to a janitorial business tied up in tax liens worth hundreds of thousands of dollars and linked to the local company that provides security in most city buildings and public schools, government records show.

    City officials awarded a $641,000 contract for janitorial services to Designmark Services Inc. on Nov. 1.

    The contract, issued on a sole-source basis, was awarded one month after the Internal Revenue Service had filed a tax lien for the second time this year against Designmark.

    The IRS' Sept. 1 lien against Designmark showed $88,921 in unpaid taxes during the first quarter of 2005. In March, the IRS filed a lien totaling more than $325,000 for unpaid taxes since 2000, according to documents at the D.C. Office of the Recorder of the Deeds.

    Designmark's financial troubles have occurred while city officials and the company's top executives have faced questions about the finances of Hawk One Security Inc., a separate firm that shares the same Northwest address and top executives as Designmark, city records show.

    Hawk One began a two-year contract for about $30 million in July to provide hundreds of private guards in D.C. public schools. The company also holds a separate contract worth about $14 million to provide security in dozens of city government buildings.

    Contracting officials yesterday said they knew about Designmark's tax problems in August, when the IRS told them about an arrangement for the company to pay its debt.

    "The Designmark Inc. contract is a bridge contract issued ... for services to continue until the awarding of a new contract," said Janis Bolt, a spokeswoman for the D.C. Office of Contracting and Procurement.

    Neither Hawk One nor Designmark officials returned phone calls yesterday.

    Some school officials earlier this year expressed concern about Hawk One's financial stability after complaints from guards about not being paid on time and a background check by the city's contracting office that showed tax liens.

    The company has blamed the bounced checks to its employees on an accounting mix-up, saying Hawk One is on solid financial footing.

    It also has said its tax liens were incurred under previous management more than a decade ago.

Copyright © 1999 - 2005 News World Communications, Inc.
http://www.washingtontimes.com/metro/20051128-101536-3298r.htm

# Metropolitan

## Security firm challenges loss of D.C. schools contract

By Jim McElhatton
THE WASHINGTON TIMES
June 10, 2005

The District's $15.1 million contract award to Hawk One Security Inc. to post guards in city schools has been temporarily halted, after a legal challenge from the outgoing contractor that questions Hawk One's finances and the contract selection process.
 The D.C. Contract Appeals Board notified officials in the Office of Contracting and Procurement of the protest yesterday, citing city regulations that bar a contract from moving forward once a formal appeal has been filed.
 Hawk One was set to start work in the schools on July 1 through a $15.1-million-per-year contract that runs through the 2006-07 school year. The company recently began work on a separate $14.2 million contract to guard about 100 city government buildings.
 The District has 20 days to respond to the challenge by Watkins Security of D.C. Inc. The appeal cites Hawk One's unpaid federal income taxes and previously undisclosed testimony by top school and police officials in seeking to overturn the contract award.
 In a Nov. 18 deposition, the Metropolitan Police Department's deputy chief administrative officer -- Margaret Poethig, who headed the school security contract's evaluation panel -- noted several problems early in the contract selection process.
 According to the deposition, Miss Poethig said she confronted Police Chief Charles H. Ramsey about misgivings.
 She testified that she told Chief Ramsey "about how incredibly impossible and ridiculous this was and how I was not qualified, nor did I have the resources, nor did I think it was a good idea for numerous reasons to do it this way and please don't make me do it and everything else."
 A police spokesman said Chief Ramsey was unavailable for comment yesterday.
 In a telephone interview yesterday, Miss Poethig said she did not recall making the statement in her 61-page deposition. She was deposed in connection with a separate, pre-bid protest that Watkins filed last year.
 Miss Poethig yesterday said she recently resigned from the police department and is taking a job in the Justice Department, adding that her resignation was not influenced by any concerns over the school system's security contract.
 "I think, in the end, we did an excellent job following the procurement process and evaluating the proposals," she said yesterday.
 Pam Satterfield, chief of staff for the D.C. Office of the Attorney General, yesterday said officials plan to challenge Watkins' protest. She declined to comment on the case, saying city officials had just received the appeal yesterday.

Copyright ? 1999 - 2005 News World Communications, Inc.
http://www.washingtontimes.com/metro/20050609-105042-1586r.htm

## Metropolitan

## Contract awarded despite tax liens

By Jim McElhatton
THE WASHINGTON TIMES
November 29, 2005

    City officials generally have given Hawk One good marks.
    Edward D. Reiskin, deputy mayor for public safety and justice, said yesterday that the Metropolitan Police Department "is satisfied with the performance of Hawk One."
    Designmark and Hawk One are separate but closely related companies.
    They are based in the same offices on H Street in Northwest and on Martin Luther King Avenue in Southeast and share the same top executives, city and court records show.
    Patrick McRae is president of Designmark, and Tyrone Thompson serves as its registered agent and vice president, records show.
    Mr. Thompson is Hawk One's president, and Mr. McRae has identified himself in a previous interview as the security company's senior executive officer.
    In addition, the companies were named in several of the same lawsuits in recent years, including one in which Aetna Healthcare Inc. sued Mr. Thompson under civil provisions of the Racketeer Influenced and Corrupt Organizations (RICO) Act during the late 1990s.
    In its lawsuit, the health insurance company said Hawk One was created as a shell entity to obtain cheaper workers' compensation insurance for other, interrelated companies.
    Attorneys for Mr. Thompson denied any improper activities, and the lawsuit was settled out of court in 2001.
    Mr. Thompson also faces a recent lawsuit filed in D.C. Superior Court by Sherry Drake, who was married to Hawk One's late founder and previous owner, Carthur Drake.
    The lawsuit states that Hawk One officials intentionally left open some IRS tax liens because closing out the debts would have triggered a settlement deal, in which officials would have had to hand over cash and property to Mrs. Drake.
    However, a former attorney for Mr. Drake has sought to dismiss the complaint, saying the lawsuit stemmed from dissatisfaction over the terms of Mr. Drake's estate.

Copyright © 1999 - 2005 News World Communications, Inc.
http://www.washingtontimes.com/metro/20051128-101536-3298r.htm

**WTOP 103.5 FM 820 AM** — Washington's News, Traffic & Weather — Now On 103.5 FM — LISTEN ONLINE — HD Radio

Home Page > News > Local > Local Stories

December 29th, 2006

# Special Officer Wanted on Prior Domestic Charge

Jul 12th - 3:22pm
Neal Augenstein, **WTOP Radio**

WASHINGTON -- A special police officer -- charged with two armed robberies in Georgetown Friday -- was wanted on a different charge before he was hired to protect city government buildings.

WTOP Radio has learned there was a warrant for Xavier Brooks on a domestic assault charge before the night he allegedly used his .38 caliber gun to rob two people in the 2800-block of Dumbarton Street in Northwest.

So why was Brooks carrying a gun, wearing a badge and protecting D.C. buildings when there was a warrant for his arrest? His employer, Hawk One Security, says it was unaware of the warrant when it hired Brooks one month ago.

The company says D.C. Police never provided any information about the warrant, but the company acknowledges it could have done its own separate background check.

Lieutenant Jon Shelton, of the licensing branch of Metropolitan Police Department would not comment on this particular case. He says, in general, a special police officer goes through a thorough background check yearly. If a commissioned SPO is arrested, he is required to notify his employer and MPD, and police immediately revoke the license, pending the investigation.

Hawk One and police officials acknowledge it is possible that Brooks was never aware of the outstanding warrant.

Police say Brooks used his service revolver to demand a man's wallet while his co-defendant pointed a gun at a woman and took her purse.

After the crime, police put out a lookout and arrested both men during a traffic stop.

They were stopped at a traffic light on M Street, NW, at 30th Street. The arresting officer says "the defendant and co-defendant were breathing very heavy and sweating," according to the charges.

When Brooks handed over his identification that said he was a special police officer, the officer asked him whether he was armed and he replied that he was.

The charges say police found the service revolver in a black nylon bag on the floor of the vehicle.

They also found the co-defendant's gun.

As a special police officer, Brooks had the authority under D.C. law to make arrests and to take his service weapon home.

Hawk One tells WTOP that Brooks provided security for the D.C. Department of Human Services on New York Avenue in Northeast.

(Copyright 2005 by WTOP Radio. All Rights Reserved.)

< Back

Home | Site Map | Advertise with Us | Contact Us | Privacy Statement | EEO Public File Report
AP material Copyright 2006 Associated Press. All rights reserved. This material may not be published, broadcast, rewritten, or redistributed.

## Metropolitan

### Schools security contract gets nod

By Jim McElhatton
THE WASHINGTON TIMES
July 7, 2005

A D.C. government panel is allowing Hawk One Security Inc. to begin work on a contract to post guards in the District's public schools while it decides whether to overturn the two-year, $30.3 million award.

The contract was frozen after the outgoing contractor, Watkins Security Agency of DC Inc., filed a legal challenge last month that criticized the bidding process and raised questions about Hawk One's finances.

In a June 27 ruling, the D.C. Contract Appeals Board lifted a temporary stay issued on the contract after the protest was filed.

"There is no allegation that the transition of performance of services ... cannot be made smoothly," the board stated in its three-page ruling.

However, the future of the contract remains uncertain.

The ruling means that Hawk One can take over the schools security contract while the appeals board decides whether to overturn the award and give it back to Watkins Security, according to legal documents.

Watkins officials had asked the board to suspend the Hawk One contract until the board decides on Watkins' protest.

But the board denied the request, saying the contract still could be transferred back to Watkins if it wins its challenge.

"There is no indication that the transition from the awardee [Hawk One] back to the protester [Watkins] would not be handled equally well if the protest is sustained," the board ruled.

In arguing to keep the contract, Watkins officials have said that D.C. officials ignored Hawk One's unpaid income taxes and did not properly handle the bidding process.

Hawk One owes more than $1 million in unpaid taxes to the Internal Revenue Service, according to city records.

However, city officials have said the company's finances should not disqualify it because it recently secured a line of credit worth about $20 million.

Copyright © 1999 - 2005 News World Communications, Inc.
http://www.washingtontimes.com/metro/20050706-100241-5810r.htm

# Metropolitan

## School security remains questionable

By Jim McElhatton
THE WASHINGTON TIMES
July 18, 2006

D.C. public schools, which have endured criticism and scrutiny of their security, continue to struggle with guards fraternizing with students and radios that cannot communicate, community and school leaders say.

Their concerns are being aired on the heels of eight government audits highlighting problems in school security in the past few years and last year's takeover of school security operations by the Metropolitan Police Department.

"It's kind of ridiculous to walk in at 4:30 [p.m.] and see everything wide open," Cathy Reilly, director of the Senior High Alliance of Parents, Principals and Educators, testified Friday during a D.C. Council hearing on school security. "There's nobody there."

Marlene Berlin, a member of Wilson High School's local restructuring team, said the transition of security from the school system to the police department "has not gone very well, frankly."

Security officers "flow in and out of the school" without the principal being notified, and some officers refuse to deploy under the principal's orders, said Miss Berlin, who was testifying on behalf of Principal Stephen P. Tarason.

"Teachers are concerned about the level of fraternization between security officers and students," she said.

Friday's oversight hearing was convened by council members Kathy Patterson, Ward 3 Democrat and chairwoman of the Education, Libraries and Recreation Committee, and Phil Mendelson, at-large Democrat and chairman of the Judiciary Committee.

Assistant Metropolitan Police Chief Gerald Wilson, who oversees school security, said he has not heard any complaints about guards fraternizing with students since the department took over security last year.

"We want the security personnel to be mentors, to get to know the young people," Chief Wilson said. "They're going to have to have some type of cordial conversation. Is that fraternization? I don't know."

Chief Wilson defended his department's role, saying schools now operate in a "safe, stable manner." The hundreds of security guards in the school system are privately employed through D.C.-based Hawk One Security Inc., but the police department supervises them.

Hawk One officials did not testify at the hearing, and the company did not respond to phone messages yesterday.

Copyright © 1999 - 2006 News World Communications, Inc.
http://www.washingtontimes.com/metro/20060717-103555-7726r.htm